**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert McGill and Lorraine McGill, | No. CV12-01671 PHX DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| National Specialty Insurance Company, et al., | |
| Defendants. | |

Pending before the Court are the following motions: a motion to remand filed by Plaintiffs Robert and Lorraine McGill (Doc. 46); a motion to dismiss for failure to state a claim filed by Defendants Payless Car Rental System Incorporated ("Payless") and PCR Venture of Phoenix LLC ("PCR Venture") (collectively "the Rental Defendants") (Doc. 5); a motion for Rule 56(d) relief filed by Plaintiffs (Doc. 15); a second motion to dismiss for failure to state a claim filed by Defendant Peakstone Financial Services Incorporated ("Peakstone") (Doc. 51); and a motion to dismiss filed by the Rental Defendants, Dennis Randall Fisher, Jr., and Defendants Knight Management Insurance Services LLC ("Knight"), KnightBrook Insurance Company ("KnightBrook"), and National Specialty Insurance Company ("National Specialty") (collectively "the Insurance Defendants") (Doc. 57). The motions are fully briefed. For the reasons set forth below, the Court will deny the motion to remand, convert the Rental Defendants' motion to dismiss to a motion for summary judgment and deny the motion, deny Plaintiffs' motion for Rule 56(d) relief, grant Peakstone's motion to dismiss, and grant in part and deny in part the Rental and

Insurance Defendants' motion.[1]

**I.     Background.**

On February 17, 2010, Michael Bovre rented a vehicle from Payless Car Rental. Doc. 40 at 3. The rental agreement stated: "___ BY INITIALING HERE, YOU DECLINE TO PURCHASE SUPPLEMENTAL LIABILITY INSURANCE AND YOU AGREE TO BE PRIMARILY RESPONSIBLE FOR ALL DAMAGE OR INJURY YOU CAUSE TO OTHERS OR THEIR PROPERTY." *Id.* Mr. Bovre did not initial next to this statement. *Id.* at 3-4. Mr. Bovre believes that Mr. Fisher, the Payless desk agent, advised him that the rental agreement provided Supplemental Liability Insurance ("SLI") coverage. *Id.* at 4.

On March 1, 2010, Mr. Bovre was involved in a car accident while driving the rental vehicle. *Id.* Plaintiffs sustained significant permanent injuries in the accident. *Id.*

On February 8, 2011, Plaintiffs filed a civil action against Mr. Bovre and submitted a settlement demand for $1,500,000. *Id.* The settlement demand was for an amount within the total available liability limits and protection afforded by the following: (1) Mr. Bovre's personal liability insurance limit of $500,000 provided by Travelers Insurance Company ("Travelers"), (2) SLI coverage of $1,000,000 provided by Sonoran National Insurance Group ("Sonoran"), National Specialty and/or KnightBrook, and (3) Payless's mandatory rental car coverage of $30,000 pursuant to A.R.S. § 28-2166. In response to the settlement demand, Travelers and Payless agreed to make $530,000 immediately available in exchange for a full and final release of all claims against Mr. Bovre and a dismissal of the lawsuit. *Id.* at 4-5. Knight, Sonoran, National Specialty, KnightBrook, and Payless denied SLI coverage to Mr. Bovre and denied any responsibility to defend or indemnify him in any lawsuit brought by Plaintiffs. *Id.* at 5. Due to this denial, Mr. Bovre was not able to obtain a full and final release of all claims

---

[1] The requests for oral argument are denied. The parties' briefings and other submissions have more than amply addressed the issues raised by these motions, and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1. and a dismissal of Plaintiffs' lawsuit. *Id.*

2. Mr. Bovre was concerned about the substantial possibility of a jury verdict in excess of $530,000, and desired to protect his interests by entering into a settlement agreement with Plaintiffs. *Id.* Plaintiffs agreed to limit their claims against Mr. Bovre by executing a covenant not to execute against him in exchange for the $530,000 payment from Travelers and Payless and an assignment of any and all rights Mr. Bovre may have had against Defendants under Arizona law. *Id.* at 6. The claims against Mr. Bovre were settled on those terms.

Plaintiffs subsequently filed this action in state court on June 28, 2012. Doc. 1-2 at 36. Plaintiffs assert claims for breach of contract, breach of the covenant of good faith and fair dealing, negligence (including claims of insurance producer/marketer malpractice and negligent misrepresentation), and punitive damages. Doc. 40 at 6-7; Doc. 1-2 at 41-43. On August 6, 2012, Defendants removed the case to this Court on the basis of diversity jurisdiction. Doc. 1.

Peakstone filed a motion to dismiss (Doc. 18) and a motion for a more definite statement (Doc. 19) on August 27, 2012. Plaintiffs filed a response and moved in the alternative for leave to file an amended complaint. Doc. 31. During a scheduling conference on October 5, 2012, the Court denied Peakstone's motion to dismiss, granted Peakstone's motion for a more definite statement, and instructed Plaintiffs to file an amended complaint by October 19, 2012. Doc. 35.

On October 17, 202, Plaintiffs filed an amended complaint that named Mr. Fisher, a citizen of Arizona, as a defendant. Doc. 40. Six days later, Plaintiffs filed a motion to remand on the ground that diversity jurisdiction did not exist with Mr. Fisher in the case. Doc. 46.

The Court held a telephone conference with the parties on October 24, 2012, during which the Rental Defendants, Mr. Fisher, and the Insurance Defendants objected to Plaintiffs adding Mr. Fisher without having filed a Rule 15 motion. Doc. 50. The Court stayed briefing of the motion to remand and instructed the parties to file motions to

dismiss addressing the propriety of Mr. Fisher's joinder.  *Id*.  In an order filed December 18, 2012, the Court determined that Mr. Fisher was not fraudulently joined and requested that the parties complete briefing on the motion to remand.  Doc. 69.

**II.     Motion to Remand.**

Defendants correctly note that the Court's prior order did not consider whether the amended complaint adding Mr. Fisher as a defendant would have been futile because the claims against him are time-barred.  Accordingly, the Court will first consider whether the claims asserted against Mr. Fisher are timely.

Plaintiffs' amended complaint asserts claims against Mr. Fisher for negligence and negligent misrepresentation.  Doc. 40 at 7.  In Arizona, negligence claims are subject to a two-year statute of limitation.  A.R.S. § 12-542.  For purposes of determining the timeliness of the claims, the Court accepts Plaintiffs' concession "that SLI coverage was first (and definitively) denied to Mr. Bovre on July 1, 2010, [and] . . . this is the event that triggered the statute of limitations for all claims outlined in the Complaint."  Doc. 15 at 5.  Plaintiffs' filed the amended complaint on October 17, 2012 (Doc. 40), some 109 days after the two-year limitations period had run.  The negligence claims asserted against Mr. Fisher are timely, therefore, only if they relate back to the June 28, 2012 filing of the original complaint.  Doc. 1-2 at 36.[2]

**A.     Doe Defendant Practice**.

Plaintiffs argue that Arizona Rule of Civil Procedure 10(f) allowed them 120 days after filing their original complaint to serve Mr. Fisher (a Doe defendant), and that there is no need to resort to relation back under either the Arizona or Federal rules because a party is not being changed or added.  Doc. 63 at 5.  Defendants argue that Rule 10(f) does not apply.  Doc. 64 at 2.

Arizona Rule 10(f) permits the use of a fictitious name when a plaintiff actually

---

[2] The Rental Defendants, Mr. Fisher, and the Insurance Defendants accept July 1, 2010, as the date on which the statute of limitations began to run.  Doc. 57 at 4-5; Doc. 72 at 4, n. 3.

- 4 -

1  intends to sue a defendant but does not know his name. *Gonzalez v. Tidelands Motor Hotel Co., Inc.*, 598 P.2d 1036, 1037 (Ariz. Ct. App. 1979). Under this practice, substitution of the correct name at a later date does not add a party to the case – it merely corrects the name of the defendant whom plaintiff already has sued. Thus, as Arizona courts have noted, "[t]here is no need to implicate rule 15(c) to provide for relation back since a party is not being changed or added." *Lane v. Elco Industries, Inc.*, 656 P.2d 650, 655 (Ariz. Ct. App. 1982); *see also Gonzalez*, 598 P.2d at 1037 (noting that the lack of knowledge "must be real and not feigned, and must not be willful ignorance, or such as may be removed by some inquiry or resort to information that is easily accessible."). But when a plaintiff attempts to use Rule 10(f) to add a claim against a defendant that the plaintiff did not originally intend to sue, "[R]ule 10(f) would not be applicable and the plaintiff would need to comply with [R]ule 15(c) if the amendment of the new party is to relate back to the original complaint." *Lane*, 656 P.2d at 655.

An examination of the original and amended complaints in this case provides no indication that Plaintiffs intended to sue Mr. Fisher when they filed the original complaint. The heading of the original complaint lists "JOHN and JANE DOES I-X." Doc. 1-2 at 36. The heading of the amended complaint adds Mr. Fisher and continues to list "JOHN and JANE DOES I-X." Doc. 40 at 1. The body of Plaintiffs' original complaint provides no indication that Plaintiffs intended to bring any claims against the Payless desk agent. Thus, the John Does named in the original complaint appear to be mere placeholders, not actual defendants who were being sued by Plaintiffs but whose names were not known. As a result, Plaintiffs have not shown compliance with Arizona Rule 10(f). This simply is not a situation where Plaintiffs asserted a claim against the Payless desk agent and identified him as John Doe because they did not know his name. There were no claims made in the original complaint against the Payless desk agent. Mr. Fisher was added as an entirely new party in the amended complaint. The claim against Mr. Fisher is timely only if it relates back to the filing of the original complaint.

**B.     Relation Back.**

"The text of the federal and Arizona rules of civil procedure governing relation back are substantially similar; but application varies slightly across federal and Arizona case law." *Long v. Ford Motor Co.*, No. CV 07-2206-PHX-JAT, 2008 WL 2937751, at *4 (July 23, 2008).  The purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference . . . for resolving disputes on their merits." *Krupski v. Costa Crociere S.P.A.*, 130 S. Ct. 2485, 2494 (2010); *see also Tyman v. Hintz Concrete, Inc.*, 148 P.3d 1146, 1147 (Ariz. 2006) ("The purpose of Rule 15(c), like the federal rule upon which it is modeled, is to ameliorate the effect of the statute of limitations." (quotation marks and citation omitted)).  Both rules permit relation back on satisfaction of three conditions:  "(1) claim(s) in the amended pleading must arise out of the same conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading; (2) within the time allowed by law to commence the action plus the period provided for service of the summons and complaint, defendant(s) must have notice so that it will not be prejudiced in defending on the merits; and (3) within the time allowed by law to commence the action plus the period provided for service of summons and complaint, defendant(s) knew or should have known that, but for mistake concerning the identity of the proper party, the action would have been brought against them." *Long*, 2008 WL 2937751 at *4.

The central test for relation back is what the prospective defendant knew. *Krupski*, 130 S. Ct. at 2493-94 & 2497-98 ("Information in the plaintiffs' possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity.").  "When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Id.* at 2496.

Plaintiffs' original complaint made only one reference to the Payless desk agent:

"the Payless Car Rental desk person, while acting within the course and scope of his employment or agency with the defendants, advised Mr. Bovre that he was covered by SLI coverage." Doc. 1-3 at 39. This reference, and Plaintiffs' acknowledgement that they "intended to wait for initial disclosures to obtain the identity of the desk agent" (Doc. 63 at 3), demonstrates that Plaintiffs made a deliberate choice to file their complaint without knowing the identity of the desk agent and without pleading a claim against him as a John Doe, and that they took no steps to put the "Doe" desk agent on notice that "the action would have been brought against [him], but for a mistake concerning [his] identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). "At best, Plaintiff[s] . . . may have made an error in legal judgment as to [how to defeat removal], but such an error is not the same as a mistake about the parties' respective roles." *See Wilkins-Jones v. Cnty. of Alameda*, C-08-1485 EMC, 2012 WL 3116025, at *7 (N.D. Cal. July 31, 2012) (finding that where plaintiff's original complaint named a defendant that "unquestionably faced at least potential liability for Plaintiff's claims," the fact that plaintiff could have also asserted claims against the newly proposed defendants did not render the mistake obvious as in *Krupski*).

The Court cannot find that the result would be different under Arizona's relation back rule because that rule mirrors the federal rule and, if anything, Arizona state courts interpret the phrase "but for a mistake" less liberally than federal courts. *See Tyman*, 148 P.3d at 1149-50 ("Lack of knowledge as to the appropriate defendant . . . does not constitute a Rule 15(c)(2) mistake. . . . Just as naming a 'John Doe' defendant in the initial complaint is not a Rule 15(c)(2) mistake, it is not a mistake to name placeholder defendants while the plaintiff attempts to identify the appropriate parties."). Plaintiffs' claims against Mr. Fisher do not relate back.

**C.     Conclusion.**

The Court finds that Mr. Fisher was not properly added to this action because the claims against him are time-barred. Without the addition of Mr. Fisher, complete

1 diversity exists in this action and the Court will deny the motion to remand. Doc. 46.[3]

**III.   Motion to Dismiss by the Rental Defendants.**

   **A.   Legal Standard.**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Absent specific exceptions, the Court will not consider evidence or documents beyond the complaint in the deciding a Rule 12(b)(6) motion. *See United States v.*

---

[3] When Plaintiffs filed their amended complaint, the Court had not given them leave to add Mr. Fisher as a Defendant. The Court recognized during the conference call on October 24, 2012, however, that Plaintiffs had acted reasonably in adding him due to comments made by the Court at a previous hearing. Rather than requiring Plaintiffs to file a new amended complaint without Mr. Fisher and requiring the parties to brief a Rule 15 motion to add him to the case, the Court directed that the existing amended complaint remain in place and that Defendants file a renewed motion to dismiss, making the arguments they would have made in opposing a Rule 15 motion. The fact that the Court chose this course of action to simplify the briefing should not deprive Defendants' of the opportunity to oppose the addition of Mr. Fisher in the first instance and thereby avoid any effect his addition would have on diversity jurisdiction. Because the Court concludes that the claims against Mr. Fisher are time-barred, and would have been time-barred if Plaintiffs had sought to add him under Rule 15, the Court will treat this case as though it had denied a motion to amend and Mr. Fisher had never become a non-diverse Defendant.

*Ritchie*, 342 F.3d 903, 907-8 (9th Cir. 2003). One such exception is that the Court may take into account documents not physically attached to the pleadings, but "whose contents are alleged in a complaint and whose authenticity no party questions." *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005) (quotation marks and citations omitted). Such consideration is appropriate in the context of a motion to dismiss, and does not convert the motion into one for summary judgment. *In re Stac Elec. Sec. Lit.,* 89 F.3d 1399, 1405 n. 4 (9th Cir. 1996).

Alternatively, when a party submits materials outside the pleadings in support or opposition to a motion to dismiss, the Court may rely on these materials if the motion is converted to a motion for summary judgment. Fed. R. Civ. P. 12(d); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). When conversion to a motion for summary judgment occurs, the Court must provide notice to the opposing party and allow it to present all material pertinent to such a motion. *Garaux v. Pulley,* 739 F.2d 437, 438 (9th Cir. 1984).

In addition, conversion to a motion for summary judgment implicates Rule 56(d). Under that rule, if the nonmoving party "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). District courts should grant relief under Rule 56(d) "fairly freely" where the motion for summary judgment is filed early in litigation. *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). To establish a basis for believing that the information sought actually exists, the affidavit cannot rely on facts that are "almost certainly non-existent" or that are a result of "pure speculation." *California v. Campbell*, 138 F.3d 772, 779-80 (9th Cir. 1998).

**B.     Discussion.**

In support of their motion to dismiss, the Rental Defendants filed several affidavits and exhibits. Docs. 5-1 to 5-4. Plaintiffs' response submits that the Court should convert

- 9 -

the Rental Defendants' motion to one for summary judgment (Doc. 15 at 2), and in turn Plaintiffs filed numerous affidavits and exhibits of their own (Doc 15; Docs. 16-1 - 16-5). Accordingly, the Court will convert the motion to one for summary judgment.

### 1. Negligence.

The Rental Defendants contend that Plaintiffs' negligence claims are subject to the two-year statute of limitations found in A.R.S. § 12-542 for tort claims involving injury to property.  Doc. 5 at 6-7.  Plaintiffs argue that the entire complaint is subject to a three- or six-year statute of limitations for contracts under A.R.S. § 12-548 because "the negligence claims would not exist 'but for' the underlying rental contract."  Doc. 15 at 6 (quoting *Barmat v. John & Jane Doe Partners A-D*, 747 P.2d 1218, 1221 (Ariz. 1987) (en banc)).

In determining the limitations period applicable to Plaintiffs' negligence claims, the Court notes that where appropriate, "statutes of limitation are considered on a claim by claim basis and sub-claim by sub-claim basis."  *Newport v. Dell, Inc.*, No. CIV 08-0096-TUC-CKG (JCG), 2008 WL 4347311, at *2 (D. Ariz. Aug. 21, 2008), *adopted by* 2008 WL 4629987 (D. Ariz. Oct. 17, 2008) (citation omitted).  Although Plaintiffs do not specifically set out alternative claims, Plaintiffs have pled the following alternative theories of relief: (1) causes of action in contract for breach of contract and breach of the covenant of good faith and fair dealing, and, in the alternative, (2) causes of action in tort for negligent misrepresentation and insurer producer/marketer malpractice.  Doc. 40 at 6-7.  Rule 8(e) permits pleading in the alternative, "and there is no requirement that the Plaintiff include the magic words 'in the alternative.'"  *Isofoton, S.A. v. Giremberk*, No. CV-04-0798-PHX-ROS, 2006 WL 1516026, at *3 (D. Ariz. May 30, 2006) (citation omitted).  Plaintiffs' amended complaint states plausible negligence claims only if the rental agreement did not provide SLI coverage – otherwise, Defendants would not have breached their duties to procure SLI coverage.  Thus, if Plaintiffs' tort claims ultimately prevail, it will be because Defendants did not contract to provide SLI coverage, but instead negligently or as a matter of malpractice failed to provide that coverage.

Plaintiffs' tort claims therefore do not arise out of contract – they depend upon the absence of a contract – and the two-year limitations period applies.[4]

Under Arizona law, "[t]he discovery rule tolls limitations until the plaintiff possess a minimum knowledge sufficient to recognize that a wrong occurred and caused injury." *ELM Ret. Ctr., LP v. Callaway*, 246 P.3d 938, 941 (Ariz. Ct. App. 2010) (quotation marks and citations omitted). The Rental Defendants submit that Mr. Bovre's knowledge is the determinative factor because Plaintiffs obtained the causes of action through an assignment of rights from him. Doc. 5 at 7 (citing *Vig v. NIX Project II P'ship*, 212 P.3d 85, 91 (Ariz. Ct. App. 2009)). The Rental Defendants contend that Mr. Bovre should have been aware of the Rental Defendants' negligence when he rented the car in February of 2010 because the rental agreement did not include SLI coverage. In any event, the Rental Defendants argue that the limitations period began to run no later than April 19, 2010, when a claims adjuster advised Mr. Bovre that he was not charged for SLI. Doc. 5 at 6-7.

Plaintiffs contend that the statute of limitations did not begin to run until "the insurer denie[d] the insured the relevant coverage." Doc. 15 at 5 (quoting *Clark Equip. Co. v. Ariz. Prop. & Cas. Ins. Guar. Fund*, 943 P.2d 793, 800 (Ariz. Ct. App. 1997)). Plaintiffs submit Mr. Bovre was not denied SLI coverage until July 1, 2010, when a certified letter was sent to him denying any and all liability or obligation to provide SLI coverage under the rental agreement. Doc. 15 at 5.

Defendants have failed to meet their summary judgment burden of showing the absence of a genuine issue of material fact on when Mr. Bovre had the minimum knowledge needed to recognize that a wrong had occurred. The Rental Defendants do not explain why Mr. Bovre should have known of the Rental Defendants' alleged negligence when he rented the car. And while the April 2010 conversation with the

---

[4] The two-year statute of limitations for torts under A.R.S. § 12-542 applies to negligent misrepresentation claims, *see Hullett v. Cousin*, 63 P.3d 1029, 1034 (Ariz. 2003) (en banc), and malpractice claims, *see Sato v. Van Denburgh*, 599 P.2d 181, (Ariz. 1979) (en banc).

- 11 -

1  claims adjuster may have put Mr. Bovre on notice of issues regarding whether he paid for
2  SLI or received the coverage for free (Doc. 16-3 at 4), a question of fact exists as to
3  whether that conversation provided him with sufficient knowledge to conclude that the
4  Rental Defendants had been negligent in failing to include SLI coverage in the rental
5  agreement.  Because a material factual dispute remains as to when the two-year
6  limitations period began to run, and the Court will deny the Rental Defendants' motion
7  for summary judgment on Plaintiffs' negligence claims.

### 2. Breach of Contract Claim.

The Rental Defendants contend Plaintiffs cannot establish breach of contract because the rental agreement did not provide for SLI coverage.  Doc. 5 at 7-8.  Plaintiffs argue that the rental agreement included SLI coverage because:  (1) Mr. Bovre did not initial the section of the contract denying coverage; (2) Mr. Fisher told Mr. Bovre that he was provided with SLI coverage; and (3) at the time of the rental, Mr. Bovre believed he was protected by SLI coverage.  Doc. 15 at 9.  The Rental Defendants claim it is "completely unreasonable" to find that the agreement included SLI coverage because "[t]he Rental Defendants do not give away insurance free."  Doc. 5 at 8.

To state a prima face case for breach of contract, a plaintiff must establish the existence of a contract, a breach, and resulting damages.  *Clark v. Compania Ganadera de Cananea, S.A.*, 387 P.2d 235, 238 (Ariz. 1963).  There appears no dispute as to the existence of a contract between Mr. Bovre and the Rental Defendants; the issue is whether it included SLI coverage.  The interpretation of a contract is a question of law.  *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1138 (Ariz. 1993) (en banc).

A number of well-established principles guide the Court's interpretation of the rental agreement.  First, the Court must attempt to "ascertain and give effect to the intention of the parties at the time the contract was made[.]"  *Id.* at 1139 (citation omitted).  Second, the Court must "apply a standard of reasonableness to contract language" and construe the contract "in its entirety and in such a way that every part is given effect."  *Goddard v. R.J. Reynolds Tobacco Co.,* 75 P.3d 1075, 1078 (Ariz. Ct.

1  App. 2003) (quotation marks and citations omitted). Third, the Court must consider any
2  relevant extrinsic evidence and, if "the contract language is 'reasonably susceptible' to
3  the interpretation asserted by its proponent, the evidence is admissible to determine the
4  meaning intended by the parties." *Taylor,* 854 P.2d at 1140 (citation omitted).

5  The Court cannot determine the meaning of the contract at this stage of the case as
6  a matter of summary judgment. The contract itself contained no initials declining SLI
7  coverage. The parties have a factual dispute as to what was said and understood between
8  Mr. Bovre and Mr. Fisher. Although interpretation of the contract is a question of law,
9  the application of legal principles is informed by facts that are yet in dispute in this case
10 and summary judgment is foreclosed by that factual dispute.

### 3. Breach of Covenant of Good Faith and Fair Dealing Claim.

12 The Rental Defendants contend that because the agreement did not include SLI,
13 they retained no subsequent discretion to decline or to provide SLI coverage, and thus, as
14 a matter of law, Plaintiffs have failed to state a claim for breach of good faith and fair
15 dealing. Doc. 5 at 8. Plaintiffs argue that "there are multiple material issues of fact
16 regarding the existence of SLI coverage." Doc. 15 at 10-11.

17 Under Arizona law, a covenant of good faith and fair dealing is implied in all
18 contracts. *Rawlings v. Apodaca,* 726 P.2d 565, 569 (Ariz. 1986). As explained above, it
19 is unclear at this stage whether the parties entered into a contract for SLI coverage. The
20 Court therefore cannot grant summary judgment on the claim for breach of the covenant
21 of good faith and fair dealing.

### IV. Second Motion to Dismiss by Peakstone.

23 Peakstone contends that Plaintiffs' amended complaint fails to allege that
24 Peakstone or Sonoran[5] had authority to grant or deny SLI coverage in the first place.
25 Doc. 51 at 7. In response, Plaintiffs rely primarily on an October 7, 2010, letter from

---

[5] "The defendant Peakstone Financial Services, Inc. is a foreign (Delaware) insurance agent doing business as Sonoran National Insurance Group, duly licensed to sell and produce insurance in the State of Arizona, that acts though and is responsible for, the actions of its employees, servants and agents." Doc. 40 at 2.

1  Knight's pre-litigation attorney, in which the attorney admitted that Sonoran is the SLI
2  carrier for Payless and stated that "Sonoran is not obligated to provide any additional
3  coverage to Mr. Bovre for any claims arising out of this incident" and "has no obligation
4  to defend or indemnify Mr. Bovre with regard to this claim." Doc. 31-4.  Peakstone
5  argues that the letter from Knight's attorney does not amount to an admission on
6  Peakstone's behalf, and that Plaintiffs cannot rely on the letter to withstand the motion to
7  dismiss because Plaintiffs failed to reference the letter in the amended complaint. Doc.
8  65 at 6.

Plaintiffs' amended complaint does not incorporate or refer to the October 7, 2010, letter.  The complaint alleges that Sonoran denied SLI coverage to Mr. Bovre, but does not specify how the denial was communicated to Mr. Bovre.  Further, the letter is not central to Plaintiffs' claims because it appears undisputed that Mr. Bovre was denied SLI coverage, and the issue is the contractual propriety of that denial and the entity responsible for denying coverage.  While the letter does support Plaintiffs' contentions regarding the entity responsible for denying coverage, Peakstone disputes Plaintiffs' assertion that the letter represents an admission on its part. Doc. 65 at 5-6.  The letter appears to be from Knight's attorney, not an attorney representing Peakstone or Sonoran. Because the letter is not mentioned in or central to the amended complaint, the Court will not consider it in ruling on Peakstone's motion to dismiss. *See Ritchie*, 342 F.3d at 908.

The Court construes Plaintiffs' complaint as alleging three causes of action against Peakstone:  (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) negligence.  The Court finds that Plaintiffs' amended complaint fails to plead facts sufficient to state a plausible claim to relief against Peakstone.  Plaintiffs have not alleged facts supporting the legal conclusion that a contract existed between Mr. Bovre and Peakstone.  Without a contract, there was no implied covenant of good faith and fair dealing.  And Plaintiffs have not alleged the existence of a relationship between Mr. Bovre and Peakstone that would support a negligence claim.  Plaintiffs' sole factual

1 allegation pertaining to Peakstone's negligence is their denial of SLI coverage. Doc. 40
2 at 5. The Court will grant Peakstone's motion to dismiss.

### V.     Motion to Dismiss by the Rental and the Insurance Defendants.

This motion filed jointly by the Rental and Insurance Defendants addressed the issue of fraudulent joinder, considered by the Court in its previous order (Doc. 69), and the futility of the amendment adding Mr. Fisher, considered above. The motion raises additional arguments about the claims asserted against the Rental Defendants, Mr. Fisher, and the Insurance Defendants. The arguments pertaining to Mr. Fisher are moot because he no longer is a part of this case.

#### A.     Economic Loss Rule.

Arizona's economic loss rule may limit a contracting party to its contract remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property. *Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc.*, 223 P.3d 664, 667 & 669 (Ariz. 2010) (expanding the economic loss rule to construction defect cases "because construction-related contracts are negotiated between the parties on a project-specific basis and have detailed provisions allocating risks of loss and specifying remedies."). Whether the economic loss rule applies, depends on "context-specific policy considerations" and "the underlying policies of tort and contract law." *Id.* at 669. The Rental and Insurance Defendants contend that the economic loss rule bars Plaintiffs' negligence claims because Mr. Bovre was in privity of contract with the Rental and Insurance Defendants and Plaintiffs' negligence claims seek the recovery of purely economic damages. Doc. 57 at 16. Plaintiffs argue that their tort claims stem from a car accident that resulted in physical injury (Doc. 63 at 15) and that the economic loss rule does not apply to insurance bad faith cases (Doc. 63 at 15-18).

While this case may generally stem from Plaintiffs' injuries, their physical harm is not the subject of this action. Plaintiffs initiated this action based on rights assigned to them by Mr. Bovre, and those claims relate only to the Defendants' alleged negligence and breach of the rental agreement. The Court has not determined whether the rental

agreement included SLI coverage, and if there was no agreement whereby the parties ordered their prospective relationships by allocating the risk of future losses with respect to SLI, the contract law policy of upholding the expectations of the parties would not be undermined by allowing Plaintiffs' tort claims to proceed. *See Flagstaff*, 223 P.3d at 669. The Court cannot apply the economic loss rule and limit Plaintiffs to contractual remedies with respect "to the subject of the parties' contract," *see Cook v. Orkin Exterminating Co., Inc.*, 258 P.3d 149, 153 n. 6 (Ariz. Ct. App. 2011) (applying the economic loss rule to dismiss negligent misrepresentation claims related to the subject of the parties' contract), because, as discussed above, the Court cannot at this stage determine whether there was an SLI contract in this case. Additionally, Plaintiffs' have pled a claim of insurance producer/marketer malpractice, and the Rental and Insurance Defendants have not provided any support for the proposition that the economic loss rule bars malpractice claims. Accordingly, the Court denies the Rental and Insurance Defendants motion to dismiss the negligence claims.

**B.     Settlement Agreement's Assignment of Certain Claims.**

The Rental Defendants contend that the terms of the settlement agreement, as executed by Plaintiffs and Mr. Bovre, did not assign to Plaintiffs any of Mr. Bovre's claims against the Rental Defendants.[6]  Doc. 57 at 16-17.  Plaintiffs contend that the settlement agreement assigned all claims Mr. Bovre may have had against the Rental Defendants, with the exception of any claims arising from Payless's agreement to pay the $30,000 per incident limit pursuant to A.R.S. § 28-2166.  Doc. 63 at 18.

The Rental Defendants' argument relies on their interpretation of the settlement agreement.  The amended complaint refers to the contents of the settlement agreement (Doc. 40 at 5-6), and it appears that neither party questions the authenticity of the settlement agreement copy submitted by the Rental Defendants (Doc. 55-1).  The Court therefore will consider the settlement agreement in ruling on the Rental Defendants'

---

[6] The Insurance Defendants did not join the Rental Defendants in this argument. Doc. 57 at 2.

- 16 -

motion to dismiss without converting the motion into one for summary judgment. *See Knievel*, 393 F.3d at 1076.

The settlement agreement provides that "Mr. Bovre, hereby irrevocably assigns to the Plaintiffs, jointly and severally, all rights, title, interest or claim that they may have, of every nature and kind, against National Specialty Insurance, Knight Management Insurance Services, KnightBrook Insurance Company, Sonoran National Insurance Group and Payless, or its affiliates or subsidiaries, including his rights and claims under the insurance policy which may apply to the Plaintiffs' claims arising out of the accident." Doc. 55-1 at 5, ¶ 5. The settlement agreement further provides that "[i]t is the intent and purpose of these assignments to permit the Plaintiffs to prosecute in their names, and on their own behalf, any claims which Mr. Bovre has or may have against National Specialty Insurance, Knight Management Services, KnightBrook Insurance Company, Sonoran National Insurance Group or any other insurance company which has provided insurance for claims that might arise out of the incident with the exception of Travelers and Payless or its insurer pursuant to A.R.S. § 28-2166, Great American." *Id.* A fair reading of paragraph five of the settlement agreement is that Mr. Bovre assigned all rights of every nature and kind against Payless and its affiliates or subsidiaries with the exception of rights pursuant to A.R.S. § 23-2166 – the $30,000 coverage limit mandated by law. Doc. 40 at 4-5. That the section providing examples of the claims so assigned does not include Payless as part of the claim for anticipatory breach and/or actual breach of contract (Doc. 55-1 at 6, ¶ 5) does not alter the settlement agreement's assignment of "all rights, title, interest or claim . . . of every nature and kind, against . . . Payless" (Doc. 55-1 at 5, ¶ 5). The Court finds that the settlement agreement appears to assign to Plaintiffs all claims Mr. Bovre had against Payless and its affiliates, including Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing. Accordingly, the Court denies the Rental Defendants' motion to dismiss the contract claims.

**IT IS ORDERED:**

1. Plaintiffs' motion to remand (Doc. 46) is **denied**.
2. The Rental Defendants' motion for summary judgment (Doc. 5) is **denied** and Plaintiffs' motion for 56(d) relief (Doc. 15) is **denied**.
3. Peakstone's motion to dismiss (Doc. 51) is **granted**.
4. The Rental and Insurance Defendants' motion to dismiss (Doc. 57) is **granted in part and denied in part**: the motion to dismiss Mr. Fisher is **granted**; the motion to dismiss the negligence and contract claims is **denied**.

Dated this 29th day of January, 2013.

*David G. Campbell*
United States District Judge