**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KnightBrook Insurance Co., et al., | No. CV-12-01671-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Payless Car Rental System, Inc., et al., | |
| Defendants. | |

Defendants Payless Car Rental System, Inc. and PCR Venture of Phoenix, LLC ("Payless entities"), have filed a motion for leave to amend their answer.  Doc. 127.  The motion is fully briefed.  No party has requested oral argument.  For the reasons set forth below, the Court will grant the motion.

I.    **Background Facts.**

On February 17, 2010, Michael Bovre rented a vehicle from Payless Car Rental. Doc. 40 at 3.   The rental agreement stated: "___ BY INITIALING HERE, YOU DECLINE TO PURCHASE SUPPLEMENTAL LIABILITY INSURANCE AND YOU AGREE TO BE PRIMARILY RESPONSIBLE FOR ALL DAMAGE OR INJURY YOU CAUSE TO OTHERS OR THEIR PROPERTY."  *Id.*  Mr. Bovre did not initial next to this statement.  *Id.* at 3-4.  Mr. Bovre believed that Mr. Fisher, the Payless desk agent, advised him that the rental agreement provided Supplemental Liability Insurance ("SLI") coverage.  *Id.* at 4.  On March 1, 2010, Mr. Bovre was driving the rental car when he collided with a motorcycle driven by Robert and Lorraine McGill.  As a result of the

crash, the McGills sustained significant and permanent injuries.  *Id.*

The McGills commenced an action against Mr. Bovre on February 8, 2011.  *Id.* Also on February 8, 2011, the McGills submitted a settlement demand to Mr. Bovre for $1,500,000.  *Id.*  The settlement demand was for an amount within the total available liability limits and protection afforded by the following: (1) Mr. Bovre's personal liability insurance limit of $500,000 provided by Travelers Insurance Company ("Travelers"), (2) SLI coverage of $1,000,000 provided by Sonoran National Insurance Group, National Specialty and/or KnightBrook, and (3) Payless's mandatory rental car coverage of $30,000 pursuant to A.R.S. § 28-2166.  In response to the settlement demand, Travelers and Payless agreed to make $530,000 immediately available in exchange for a full and final release of all claims against Mr. Bovre and a dismissal of the lawsuit.  *Id.* at 4-5. Knight, Sonoran, National Specialty, KnightBrook, and Payless denied SLI coverage to Mr. Bovre and denied any responsibility to defend or indemnify him in any lawsuit brought by Plaintiffs.  *Id.* at 5.  Due to this denial, Mr. Bovre was not able to obtain a full and final release of all claims and a dismissal of Plaintiffs' lawsuit.  *Id.*

Mr. Bovre sought to protect his interests by entering into a settlement agreement with the McGills.  *Id.*  The McGills agreed to limit their claims against Mr. Bovre by entering into a *Damron* agreement in exchange for the $530,000 payment from Travelers and Payless and an assignment of any and all rights Mr. Bovre had against the SLI insurers under Arizona law.  *Id.* at 6; *see Damron v. Sledge,* 460 P.2d 997 (Ariz. 1969). In connection with the *Damron* agreement, the parties entered into an $8 million stipulated judgment.  Doc. 116, ¶ 22.

The McGills subsequently filed an action in state court on June 28, 2012 against, among others, KnightBrook Insurance Company, Knight Management Insurance Services ("the Knight entities"), and the Payless entities.  Doc. 1-2 at 36.  The McGills asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, negligence (including claims of insurance producer/marketer malpractice and negligent misrepresentation), and punitive damages.   Doc. 40 at 6-7; Doc. 1-2 at 41-43.

1    Specifically, the McGills asserted assigned claims for alleged breach of the insurance

2    contract and bad faith against the Knight entities.  Doc. 1-2 at 40-42.  They also asserted

3    assigned claims for negligence and breach of the rental contract against the Payless

4    entities.  *Id.* at 40-41.  On August 6, 2012, the action was removed to this Court on the

5    basis of diversity jurisdiction.  Doc. 1.

6           On March 14, 2013, the McGills sent a time-limited settlement demand for $1

7    million to the Payless and Knight entities that would resolve all claims.  The settlement

8    demand was set to expire on March 29, 2013.  Doc. 116, ¶ 24.  Upon request by the

9    Knight entities, the McGills reduced their demand to $970,000.  *Id.*, ¶ 25.  The Knight

10   entities requested that the Payless entities contribute to the settlement, but the Payless

11   entities refused.  *Id.*, ¶ 26.  As a result, the Knight entities funded the $970,000 settlement

12   on their own.  *Id.*, ¶ 27.  The settlement agreement assigned all of the McGills' claims

13   that had been received from Mr. Bovre to the Knight entities, including claims against the

14   Payless entities.  *Id.*, ¶ 28.

15          As a result of the Knight entities' settlement and assignment agreement with the

16   McGills, the parties in this litigation have been reshuffled.  The Knight entities  –

17   formerly defendants in this action – are now the plaintiffs, and will be referred to in the

18   remainder of this order as "Plaintiffs."   On June 14, 2013, Plaintiffs filed a complaint

19   asserting two types of claims against the Payless entities ("Defendants"): (1) Mr. Bovre's

20   assigned claims for breach of contract, breach of oral contract, negligent

21   misrepresentation, and negligence; and (2) Plaintiffs' independent claims for equitable

22   indemnification and breach of fiduciary duty.  *Id.*, ¶ 30-76.  Defendants filed an answer

23   on July 1, 2013.  Doc. 116.  In their answer, Defendants did not allege bad faith or assert

24   a counterclaim.   Defendants filed a motion for leave to amend their answer on

25   September 30, 2013.  Doc. 127.  Defendant PCR Venture of Phoenix, LLC, seeks to

26   assert a counterclaim against Plaintiffs in the amended answer.  Doc. 127 at 1.

27

28

**II.    Legal Standard.**

Rule 15 makes clear that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The policy in favor of leave to amend must not only be heeded, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), it must be applied with extreme liberality, *see Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 880 (9th Cir. 2001). This liberality "is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

The liberal policy in favor of amendments is subject to some limitations. The Supreme Court has established that motions to amend should be granted unless the district court determines that there has been a showing of: (1) undue delay; (2) bad faith or dilatory motives on the part of the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) futility of the proposed amendment. *Foman*, 371 U.S. at 182. "Generally, this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (citing *DCD Programs*, 833 F.2d at 186). Significantly, "[t]he party opposing amendment bears the burden of showing prejudice," futility, or one of the other reasons for denying a motion to amend. *DCD Programs*, 833 F.2d at 187.

**III.   Analysis.**

Defendants seek to amend their complaint by adding a counterclaim. The counterclaim sounds in tort and stems from Plaintiffs' alleged bad faith in violation of the duty to act with good faith and fair dealing towards an insured. *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279-80 (Ariz. 2000) (finding that "an insurer may be held liable in a first-party case when it seeks to gain unfair advantage of its insured through conduct that invades the insured's right to honest and fair treatment[.]"). Plaintiffs argue that the Court should deny Defendants' motion to amend because amendment would be futile. Doc. 129 at 4. Plaintiffs assert no other justification to deny

1    Defendants' request to amend.[1]

2        A proposed amendment is futile only if no set of facts can be proved under the

3    amendment that would constitute a valid claim or defense.  *Miller v. Rykoff-Sexton, Inc.*,

4    845 F.2d 209, 214 (9th Cir. 1988); *see Foman*, 371 U.S. at 182 (stating that "[i]f the

5    underlying facts or circumstances relied upon by a [movant] may be a proper subject of

6    relief, he ought to be afforded an opportunity to test his claim on the merits.").

7        Under Arizona law, an insurance contract is not an ordinary commercial bargain.

8    "[I]mplicit in the contract and the relationship is the insurer's obligation to play fairly

9    with its insured."  *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986).  The insurer has

10   "some duties of a fiduciary nature," including "[e]qual consideration, fairness and

11   honesty."  *Id*. at 571.  An insurer's action rises to the level of bad faith where "the

12   culpable conduct is an intentional act by which the insurer fails to provide the insured

13   with the security and protection from calamity which is the object of the relationship."

14   *Id*. at 576.

15       Defendants argue that Plaintiffs' attempt to recover $970,000 that Plaintiffs

16   voluntarily paid to settle the bad faith claims against them and the attorneys' fees that

17   they incurred to defend against those claims violates the anti-subrogation rule.  Doc. 127

18   at 7.  Arizona has adopted the anti-subrogation rule, which precludes an insurer from

19   being subrogated to a claim against its own insured.  *See Indus. Indem. Co. v. Beeson*,

20   647 P.2d 634, 638 (Ariz. Ct. App. 1982) ("No right of subrogation can arise in favor of

21   an insurer against its own insured since, by definition, subrogation exists only with

22   respect to rights of the insurer against third persons to whom the insurer owes no duty.

23   To allow subrogation under such circumstances would permit an insurer, in effect, to pass

24   the incidence of the loss, either partially or totally, from itself to its own insured and thus

25   avoid the coverage which its insured purchased.").  Defendants also argue that Plaintiffs'

---

26

27       [1] The parties do not address the fact that Defendants' motion was filed after the
     Court's deadline for amending pleadings.  Doc. 115.  Because the motion was filed well
28   in advance of the discovery deadline, and Plaintiffs do not claim undue delay or
     prejudice, the Court will not deny the motion on this basis.  The existing case
     management deadlines will apply fully to the counterclaim.

bad faith is evident in three other acts: (1) failure to obtain a release for PCR Venture in the settlement negotiations with the McGills; (2) demanding a contribution from PCR Venture to the settlement of bad faith claims that were actionable only against Plaintiffs; (3) obtaining and asserting claims against a party to whom Plaintiffs owed fiduciary duties.

Plaintiffs argue that "the tort of bad faith arises solely in the context of claim handling, and not in the context of underwriting activities or other business/financial disputes." Doc. 129 at 6. Plaintiffs are incorrect. A brief survey of Arizona law – relevant portions of which were included in Defendants' initial brief – indicates that the tort of bad faith arises in the many factual contexts. *See Rawlings*, 726 P.2d 570 (finding bad faith in insurer's self-interested actions to impede its insured from recovering uninsured portion of its loss from adjacent property owner); *see also Filasky v. Preferred Risk Mut. Ins. Co.*, 734 P.2d 76, 82 (Ariz. 1987) (finding bad faith in insurer's attempt to withhold payment of an undisputed portion of a claim on condition of favorable settlement of a separate, disputed portion); *Nardelli v. Met. Grp. Prop. & Cas. Ins. Co.*, 277 P.3d 789, 795 (Ariz. Ct. App. 2012) (finding bad faith in insurer's unreasonable decision to repair rather than scrap insured's automobile, to cover less than actual repair costs, and not to advise policyholders of relevant policy provisions); *Borland v. Safeco Ins. Co. of Am.*, 709 P.2d 552, 557 (Ariz. Ct. App. 1985) (finding bad faith for failure to pay the undisputed portion of a claim when coverage was not contested but the total amount of loss was disputed). Plaintiffs suggest that all of these cases involve examples where an "insurer was found liable for bad faith conduct in processing a claim tendered to the insurer by the insured claimant." Doc. 129 at 7. This simply is not correct. In *Rawlings*, the insurer engaged in bad faith by obstructing its insured's ability to assert a claim against an adjacent property owner who had started the fire that damaged the insured's property. The bad faith did not occur in claims handling – the insurer paid the insured the full amount of the insurance policy. The bad faith occurred when the insurer refused to disclose a fire damage report to the insured that implicated the neighbor. Thus,

1    under clear Arizona precedent, insurance bad faith is not limited to claim handling.

2    *Rawlings*, 726 P.2d at 565-71

3          Plaintiffs further argue that Defendants' counterclaim is futile because no

4    fiduciary duties that may have been owed to Defendants are implicated in the claims

5    assigned from the McGills. Doc. 129 at 8. Plaintiffs assert that they entered into two

6    legally distinct relationships with Defendants: (1) an insurer-insured relationship; and

7    (2) a principal-agent relationship. *Id*. Defendants were covered as insureds of Plaintiffs'

8    policy, but Defendants were also agents for Plaintiffs inasmuch as Defendants were

9    selling insurance policies to their rental customers. Plaintiffs admit that fiduciary duties

10   may arise in the context of their role as Defendants' insurer, but they assert that no such

11   duties arise in the principal-agent context. *Id*. Therefore, because the claims assigned to

12   Plaintiffs involve a transaction wherein Defendants were acting as Plaintiffs' agent,

13   Plaintiffs claim that the tort of bad faith cannot be asserted. The Court concludes that it

14   cannot, at the pleading stage, parse Plaintiffs' actions and claims so finely as to conclude

15   that a fiduciary breach could not have occurred. Such arguments are better resolved in

16   the more complete factual setting of summary judgment. Furthermore, it appears that

17   Defendants were covered even in their role as agents by Plaintiffs' insurance policy.

18   Doc. 129-1 at 33, Part I.

19         Finally, Plaintiffs argue that Defendants tacitly acknowledged that they had no

20   cognizable counterclaims when they agreed that Plaintiffs could assert the claims set

21   forth in the second amended complaint. Doc. 129 at 13. The Court cannot agree. The

22   communication between the parties simply confirmed a prior agreement that Defendants

23   would file no Rule 12(b)(6) motions in response to the second amended complaint.

24   Doc. 129-1 at 29. Defendants' counsel expressly refused, however, to waive any rights to

25   respond to the second amended complaint on any basis besides Rule 12(b)(6). *Id*.

26

27

28

1    **IT IS ORDERED** that Defendants' motion (Doc. 127) is **granted**.  As noted

2  above, the existing litigation schedule applies to the counterclaim.  The parties are

3  advised that the Court will not be inclined to extend the existing deadlines.

4         Dated this 22nd day of November, 2013.

5

6

7

8                                          David G. Campbell
                                        United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28