**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

KnightBrook Insurance Company and Knight Management Insurance Services, LLC,

Plaintiffs,

v.

Payless Car Rental System, Inc.; PCR Venture of Phoenix, LLC; ABC Corporations I-X; XYZ Partnerships I-X,

Defendants.

No. CV-12-01671-PHX-DGC

**ORDER**

Following summary judgment rulings, Plaintiffs KnightBrook Insurance Company ("KnightBrook") and Knight Management Insurance Services, LLC (collectively, the "Knight entities") have claims remaining against Defendants Payless Car Rental System, Inc. and PCR Venture of Phoenix, LLC (collectively, the "Payless entities") for negligence, negligent misrepresentation, breach of fiduciary duty, and equitable indemnity. The Payless entities have a counterclaim for insurance bad faith. The Court held a bench trial on these claims from March 31 through April 2, 2015. This order will set forth factual findings in Section I and mixed findings of fact and conclusions of law in the remaining sections. The Court will award $970,000 to the Knight entities.

## I.     Background.

The following background facts are based on stipulations in the parties' proposed final pretrial order (Doc. 325 at 2-6) and evidence presented at trial. Citations to trial

exhibits in this order do not mean that the exhibits are the sole basis for the Court's finding.  The Court also has taken into account the testimony presented at trial and in deposition excerpts submitted by the parties.

1.	KnightBrook Insurance Company issued Commercial Automobile Liability Insurance Policy No. 9SLIKBAZ000101 to PCR Venture for the period from April 1, 2009 to April 1, 2010 (the "SLI Policy").  PCR Venture is the "Named Insured" in the SLI Policy.

2.	On February 17, 2010, the Payless entities rented a car to Michael Bovre.

3.	The rental agreement provided Bovre with an opportunity to purchase Supplemental Liability Insurance ("SLI") of $1 million.

4.	The rental contract stated: "___ BY INITIALING HERE, YOU DECLINE TO PURCHASE SUPPLEMENTAL LIABILITY INSURANCE AND YOU AGREE TO BE PRIMARILY RESPONSIBLE FOR ALL DAMAGE OR INJURY YOU CAUSE TO OTHERS OR THEIR PROPERTY."  Ex. 1 at 1 (emphasis in contract).

5.	Bovre did not initial on the line next to this statement.

6.	The Payless entities' desk agent, Dennis Fisher, had drawn a circle around the blank space next to the SLI coverage line as an indication of where Bovre should initial.  It was in the same relative location as other lines where Bovre did place his initials to accept or decline other benefits offered by the Payless entities.

7.	Bovre did not pay for SLI coverage.

8.	The only insurance Bovre paid for as part of his rental contract was personal accident insurance.  As required under Arizona statutory law, the Payless entities also provided Bovre with liability insurance coverage for minimum financial limits of $15,000/$30,000.

9.	The original vehicle that Bovre rented, a Dodge Caravan, was retuned because the tires would not hold air.

10.	Bovre brought the Caravan back to the Payless entities and exchanged it for a Dodge Durango.

11.     On March 1, 2010, Bovre was driving the Dodge Durango when he collided with a motorcycle driven by Robert and Lorraine McGill.

12.     The McGills sustained significant and permanent injuries as a result of the accident.

13.     Attorney Jefferson Collins, who was retained by Bovre's personal liability insurance carrier, Travelers Insurance Company ("Travelers"), communicated with Bovre on June 22, 2010.

14.     On July 1, 2010, the Knight entities sent a letter to Bovre indicating that because he did not pay for SLI coverage at the time of the rental, he did not have any coverage for the McGill accident under the SLI Policy.

15.     On August 26, 2010, attorney Collins wrote to the Knight entities and explained that Bovre and Travelers were seeking confirmation that SLI coverage would be provided to Bovre based on Bovre's communications with the Payless entities' desk agent, Dennis Fisher.

16.     On February 8, 2011, Lorraine and Robert McGill filed a civil action against Bovre seeking damages. The case was captioned *McGill, et al. v. Bovre*, Maricopa County Superior Court Case No. CV2011-003518 (the "Underlying Lawsuit").

17.     On the same day, the McGills submitted a settlement demand to Bovre for $1,500,000.

18.     Pursuant to this settlement demand, the McGills sought the total available liability limits afforded by (1) Bovre's personal automobile liability insurance policy with Travelers, which had a limit of $500,000; (2) the total available limit of the SLI coverage, which the McGills believed to be $1,000,000; and (3) the Payless entities' mandatory rental car coverage of $30,000.

19.     Travelers and the liability insurer for the Payless entities, Great American Assurance Company, offered to pay $530,000 to settle the claims against Bovre.

20.     Attorney Collins filed a notice of appearance in the Underlying Lawsuit on September 12, 2011, and an answer on Bovre's behalf on September 21, 2011.

21.     The McGills declined to provide a full and final release of all claims for $530,000.

22.     To protect his interests, Bovre entered into a *Damron* settlement agreement with the McGills.  *See Damron v. Sledge*, 460 P.2d 997 (Ariz. 1969).

23.     The McGills agreed to accept $530,000 and an assignment of any and all claims Bovre had against the Knight and Payless entities under Arizona law, and not to seek further collections from Bovre.

24.     As part of the agreement, Bovre and the McGills stipulated to an $8 million judgment against Bovre.

25.     On June 28, 2012, the McGills filed a second lawsuit against the Knight entities and the Payless entities.

26.     The McGills did not pursue any direct causes of action in this second lawsuit, but instead pursued Bovre's assigned claims for negligence, negligent misrepresentation, breach of contract, and bad faith (among others).

27.     Desk agent Dennis Fisher was deposed on January 23, 2013.

28.     Fisher did not remember anything specific about the Bovre rental transaction and therefore could not explain why he failed to get Bovre's initials next to the SLI declination.

29.     Bovre was deposed on March 12, 2013.  He testified that Fisher told him liability insurance was included in the rental contract and that he did not initial the SLI line because he did not want to decline it.

30.     On March 14, 2013, the McGills sent a time-limited settlement demand for $1 million to the Payless and Knight entities that would resolve all claims in the second lawsuit.  The settlement demand was set to expire on March 29, 2013.  The McGills later reduced their demand to $970,000 to account for the $30,000 they had received in state-mandated liability coverage.

31.     The Knight entities requested that the Payless entities join them in paying $970,000 to settle the second lawsuit, with the Knight and Payless entities each paying

50% or $485,000.  Ex. 59.  The Payless entities declined to participate.

32.    The Knight entities told the Payless entities that they would assert claims for contribution and indemnification against the Payless entities if they did not contribute to settlement of the second lawsuit.

33.    The Knight entities settled with the McGills by paying $970,000 and taking an assignment of all of the Bovre claims against the Payless entities.

34.    On June 14, 2013, the Knight entities filed a complaint against the Payless entities asserting Bovre's assigned claims for breach of contract, breach of oral contract, negligent misrepresentation, and negligence, as well as additional claims for equitable indemnification and breach of fiduciary duty.

35.    The Court found that the breach of contract claims were extinguished through an accord and satisfaction when the $970,000 was paid.  Doc. 261 at 9-11.

## II.    Statute of Limitations.

### A.    Negligence Claims.

The Knight entities assert claims for negligence and negligent misrepresentation that originally belonged to Bovre.  Doc. 116, ¶¶ 30-35, 36-42.  The negligence claim arises from desk agent Dennis Fisher's failure to ensure that Bovre's paperwork was completed carefully.  *Id*., ¶ 32.  The negligent misrepresentation claim arises from Fisher's alleged statement to Bovre that liability coverage was included in the car rental contract notwithstanding Bovre's failure to pay for it.  *Id*., ¶¶ 37-39.  Because the Knight entities obtained the negligence claims through an assignment from Bovre, they stand in Bovre's shoes and are subject to any statute of limitations defense that would have applied against Bovre.  *See K.B. v. State Farm Fire & Cas. Co.*, 941 P.2d 1288, 1292 (Ariz. Ct. App. 1997) (assignee "'can stand in no better position than the assignor' and '[a]n assignment cannot alter the defenses or equities of the third party'" (quoting *Stephens v. Textron, Inc.*, 619 P.2d 736, 739 (Ariz. 1980))).

The Payless entities argue that both negligence claims are barred by the statute of limitations.  The Court agrees.

In Arizona, tort claims sounding in negligence are subject to a two-year limitations period. *See* A.R.S. § 12-542(3); *ELM Ret. Ctr., LP v. Callaway*, 246 P.3d 938, 941 (Ariz. Ct. App. 2010). Bovre's negligence and negligent misrepresentation claims were first asserted on June 28, 2012, when they were included in the second lawsuit filed by the McGills against the Knight and Payless entities. *See* Doc. 1-2 at 36. Thus, the claims are barred if the statute of limitations began running more than two years earlier – before June 28, 2010.

For the statute of limitations to be triggered, Bovre must have had knowledge sufficient to identify that (1) a wrong had occurred and (2) caused injury. *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002); *see also Ritchie v. Krasner*, 211 P.3d 1272, 1288 (Ariz. Ct. App. 2009). The Court previously held that Bovre knew by June 24, 2010 – the date of a letter from attorney Collins to the Payless entities (Ex. 22) – that a wrong had occurred. Docs. 261 at 6; 266; 302. By that date, Bovre knew of the desk agent's alleged negligence in failing to complete the paperwork in a way that clearly provided SLI coverage, knew what representations the desk agent had made when he rented the car (as noted, Bovre testified that the agent promised him liability coverage), and knew that he faced significant personal liability due to his accident with the McGills. In addition, as will be explained in more detail below, by June 24 Bovre had made direct contact with the Knight entities seeking SLI coverage, had given a statement regarding the rental transaction in which he claimed to have obtained SLI coverage, had consulted with attorney Collins regarding his claim for SLI coverage, and had assisted attorney Collins in preparing the June 24, 2010 letter asserting that Bovre was entitled to SLI coverage (Ex. 22).[1] Thus, Bovre clearly had sufficient knowledge before the key date, June 28, 2010, to identify that a wrong had occurred.

---

[1] In the June 24, 2010 letter, Collins stated that he was representing Travelers Insurance Company, the company with whom Bovre had his primary liability policy. At trial, Collins testified that he met with Bovre before sending the June 24, 2010 letter and later undertook Bovre's representation at Travelers' expense. The purpose of the June 24 letter, for which Bovre plainly provided the relevant information, was to assert that Bovre was entitled to SLI coverage. Ex. 22.

The remaining question is whether Bovre had suffered "appreciable, non-speculative harm" before that date.  *See Commercial Union Ins. Co. v. Lewis & Roca*, 902 P.2d 1354, 1358 (Ariz. 1995).  The Arizona Supreme Court has held that tort damages can include "inconvenience" as well as "time and effort" incurred as a result of another's tortuous conduct.  *Rawlings v. Apodaca*, 726 P.2d 565, 577 (1986).  Bovre incurred each of these kinds of damages before June 28, 2010.

The Court finds by a preponderance of the evidence that Bovre personally contacted KnightBrook to seek SLI coverage on April 5, 2010.  This finding is supported by the Knight entities' admission that a contact was received from a Payless renter regarding SLI coverage on that date.  Ex. 149.  It also is supported by the fact that a July 1, 2010 letter from the Knight entities denying SLI coverage was written directly to Bovre at his home address, not to Collins.  Ex. 23A.  Attorney Collins testified at trial that the July 1 letter was not written in response to his actions, clearly suggesting that it must have been written in response to Bovre's own actions.

In addition, Bovre gave a recorded statement on April 19, 2010, in which he responded to a number of questions about his discussion of insurance with the desk agent when he rented the car.  Ex. 77.  The privilege log prepared by attorney Collins shows several communications between Collins and Bovre on June 22, 2010.  Ex. 60.  And Collins testified that Bovre had been in personal contact with representatives of Travelers before he had contact with Collins.

From these facts, the Court finds that Bovre incurred time, effort, and inconvenience related to the SLI coverage issue before June 28, 2010.  Because these constitute recoverable damages under Arizona law, *Rawlings*, 726 P.2d at 577, Bovre suffered "appreciable, non-speculative harm" before June 28, 2010, *Commercial Union Ins.*, 902 P.2d at 1358.  Although the monetary value of these damages may not have been substantial, a claim arises before a plaintiff sustains all, or even the greater part, of the damages caused by the defendant.  *Id.* at 1359.  As a result, the limitations period was triggered before June 28, 2010, and the negligence claims are time-barred.

1

### B.    Breach of Fiduciary Duty.

The Knight entities have sued the Payless entities for breach of fiduciary duty. They claim that the Payless entities acted as their agent in the sale of SLI coverage to car rental customers, that agents owe fiduciary duties to their principals, and that the Payless entities breached their fiduciary duties in handling the Bovre transactions.   The Payless entities assert that this claim is also barred by the statute of limitations.   The Court agrees.

The statute of limitations for breach of fiduciary duty is two years.   A.R.S. § 12-542(3); *Crook v. Anderson*, 565 P.2d 908, 909 (Ariz. Ct. App. 1977).   The Knight entities first asserted their fiduciary duty claim on June 14, 2013.   Doc. 116.   Thus, the claim is barred if it accrued before June 14, 2011.

The breach of fiduciary duty claim was not assigned to the Knight entities by Bovre.   The claim has always belonged to the Knight entities and arises from their alleged relationship with the Payless entities.   Thus, unlike the foregoing discussion of the negligence claims, which focused on Bovre's knowledge and injury, this analysis focuses on the Knight entities' knowledge and injury.

As already noted, for the statute of limitations to be triggered, the Knight entities must have had knowledge sufficient to identify that (1) a wrong had occurred and (2) caused injury.  *Walk*, 44 P.3d at 996; *see also Ritchie*, 211 P.3d at 1288.   The Court previously found that the Knight entities had knowledge of the alleged breaches of fiduciary duty in the summer of 2010.   As the Court explained:

> It is clear from the record that [the Knight entities] had notice of Fisher's alleged breach of fiduciary duty in the summer of 2010 when they learned that Fisher failed to complete the rental agreement properly, that no premium had been collected for SLI coverage, that a serious accident had been caused by Bovre and had resulted in severe injuries to the McGills, and that Bovre was asserting that he in fact was entitled to SLI coverage. Doc. 224-2, ¶¶ 7-8.

Doc. 261 at 18.

The Court stands by this finding.   The Knight entities have identified the following

breaches of fiduciary duty in their proposed final pretrial order and arguments during trial: (1) Fisher's failure to ensure that Bovre initialed the line that declined SLI coverage; (2) Fisher's alleged representation to Bovre that liability coverage was included in the rental contract; and (3) the Payless entities' use of a contract form that was confusing in its requirement that SLI be declined by the affirmative act of initialing the contract.  *See* Doc. 325 at 15 (referring back to Doc. 325 at 13-14).  The Knight entities clearly knew of each of these alleged breaches by the summer of 2010.  They had received a copy of the rental contract that contained the allegedly confusing language and lacked Bovre's initials, and they knew of Bovre's April 19, 2010 statement asserting that the desk agent said liability coverage was included.  In addition, they had received correspondence from attorney Collins, dated August 26, 2010, asserting that Bovre was entitled to SLI coverage.  Ex. 26.  The basis for this assertion was that Bovre was told by Fisher that liability coverage was included in the rental contract, Bovre did not initial the SLI line because he did not intend to decline SLI coverage, and Bovre left the rental desk with the reasonable expectation that SLI coverage was included.  *Id.*  Collins cited Arizona cases for the proposition that insurance coverage can arise from such a reasonable expectation.  *Id.* (June 24, 2010 letter included as an attachment to August 26, 2010 letter).  The Knight entities thus knew every aspect of the Payless entities' alleged breach of fiduciary duty in 2010.

The question to be resolved, then, is whether the Knight entities suffered "appreciable, non-speculative harm" before June 14, 2011.  *Commercial Union Ins.*, 902 P.2d at 1358.  The Payless entities argue that the Knight entities suffered such harm in the fall of 2010 when they retained and paid coverage counsel to address Bovre's claim to SLI coverage.  Attorney Kevin Barrett testified at trial that he was retained by the Knight entities to provide coverage advice in the fall of 2010 and that he was paid for his services.  Redacted invoices confirm this timing.  Ex. 145.  In addition, Exhibit 129 includes documents from a malpractice lawsuit the Knight entities later filed against Barrett and his firm related to the coverage advice.  The complaint filed by the Knight

1  entities asserts that Barrett was retained to provide coverage advice on the SLI issue on

2  September 8, 2010.  *Id.* (Complaint ¶¶ 15-17).

3  　　　The Knight entities rely on *Commercial Union* to argue that payment of attorneys'

4  fees to coverage counsel does not constitute injury sufficient to trigger the statute of

5  limitations.   Doc. 327 at 42.   This argument requires a careful examination of

6  *Commercial Union*.

7  　　　The insurance company in *Commercial Union* was advised by coverage counsel

8  that its policy did not cover the insured's allegedly defective construction of certain

9  townhouses.  On the basis of this advice, the insurer denied coverage.  The insured was

10  sued for the construction defects, suffered a verdict of more than $800,000, and was

11  forced into bankruptcy.  The bankruptcy trustee then filed suit against the insurer seeking

12  coverage under the insurance policy, and the court in the coverage lawsuit ultimately held

13  that the insurer's denial of coverage was incorrect.  In reaching this conclusion, the court

14  relied on a controlling Arizona case that coverage counsel had overlooked when

15  preparing the coverage opinion.  The insurance company sued coverage counsel for legal

16  malpractice.  *Commercial Union Ins.*, 902 P.2d at 1357-58.

17  　　　Coverage counsel argued that the malpractice claim was barred by the statute of

18  limitations.  The firm asserted that the insurance company had suffered injury when it

19  was forced to retain attorneys to defend the coverage action brought by the bankruptcy

20  trustee.  The Court of Appeals disagreed, but not because legal fees cannot constitute

21  harm for purposes of triggering the limitations period.  The Court of Appeals instead held

22  that incurring attorneys' fees did not trigger the limitations period because the insurance

23  company did not know that the fees had been caused by the legal malpractice of coverage

24  counsel.   That fact did not become clear until the court held, on the basis of the

25  controlling case that coverage counsel had overlooked, that the denial of coverage was

26  erroneous.  The Court of Appeals explained:

27

28  　　　　　　Although the parties have focused their arguments on the date that
　　　　　Commercial Union suffered injury, we think that the controlling issue in

- 10 -

this case is when Commercial Union became aware or should have become aware of the cause of its harm.  This could not reasonably have been determined by Commercial Union until the trial court's denial of Commercial Union's motion for summary judgment.

. . . .

This record supports the conclusion that, at least for a time during the coverage suit, Commercial Union could not, by the exercise of reasonable diligence, discover the cause of its defense costs in the coverage suit.  Such costs may have been the proximate result of [coverage counsel's] negligence, or they may have been the result of the trustee's filing of a non-meritorious lawsuit.  In any event, the cause of action did not accrue until Commercial Union knew or should have known who and what caused the expenditure of attorney's fees in the coverage suit.

*Id.* at 1360, 1361-62.

This case is different.  The Knight entities knew in the summer of 2010 that their coverage fees were caused by the alleged breach of duty by the Payless entities.  If the desk agent had properly documented Bovre's declination of SLI coverage by having Bovre initial the SLI line, the McGill's second lawsuit would never have been filed.  The Knight entities asserted this point vigorously at trial.  Indeed, they even called counsel for the McGills to testify that he would not have filed the coverage case against the Knight entities if the SLI line had been initialed.  If, on the other hand, the desk agent had properly documented a sale of SLI coverage to Bovre – by printing out a copy of the rental contract that showed SLI coverage was being purchased, having Bovre initial the SLI purchase, and charging Bovre for the SLI – then coverage would have been undisputed, the second lawsuit would not have been filed, and the Knight entities would not have been required to retain coverage counsel.  Thus, the reason the Knight entities were required to retain coverage counsel was because of the desk agent's failure to create a clear written contract and his alleged oral representation that liability was included, facts that were known to the Knight entities in the summer of 2010.

This case is not like *Commercial Union*.  The decision in *Commercial Union* was

- 11 -

based on a lack of knowledge, not a lack of injury: "Although Commercial Union sustained appreciable damage when it incurred costs for attorneys' fees in the coverage suit, until the trial court relied on [the controlling case] to deny Commercial Union's motion for summary judgment, Commercial Union had no reason to know that such defense costs were the direct result of [coverage counsel's] negligence." *Commercial Union Ins.*, 902 P.2d at 1357.  No such lack of knowledge exists here.

In summary, the Knight entities knew from the outset of this matter that the desk agent had failed to obtain Bovre's initials, had used a contract form that suggested the initials were necessary to decline SLI, and had allegedly represented to Bovre that liability coverage was included.  Their retention of coverage counsel in the fall of 2010 was a direct result of these actions.  The Knight entities therefore knew of the alleged breach of fiduciary duty and suffered appreciable, non-speculative harm before June 14, 2011.  Their breach of fiduciary duty claim is barred by the statute of limitations.

## III.   Equitable Indemnification.

### A.   Legal Standards.

The Knight entities assert a claim for equitable indemnification.  A right of equitable indemnification has been recognized by many courts.  The right is described in the Restatement as follows:

> A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

Restatement (First) of Restitution § 76 (1937).  This right of indemnification has been recognized by Arizona courts.  *See MT Builders L.L.C. v. Fisher Roofing, Inc.*, 197 P.3d 758, 764 n.2 (Ariz. Ct. App. 2008); *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 722 P.2d 975, 979 (Ariz. Ct. App. 1986) (citing Restatement § 76); *Am. & Foreign Ins. Co. v. Allstate Ins. Co.*, 677 P.2d 1331, 1333 (Ariz. Ct. App. 1983) (citing Restatement § 76).

An entity seeking indemnification need not prove with certainty that it, or the

entity from which it seeks to recover, was subject to a legal obligation.  Section 78 of the Restatement provides that an entity is entitled to indemnification if it discharged "an obligation or *supposed* obligation" for which it became responsible because of the fault of the other, and it made the payment "in the justifiable belief that [a] duty existed." Restatement (First) of Restitution § 78 (1937) (emphasis added).[2]

In addition, as the Court explained in its ruling on the summary judgment motions, a party seeking indemnification must show either that it extinguished an obligation owed by the party from whom it seeks indemnification or that other the party was at fault.  *See* Doc. 261 at 13-14.[3]

/ / /

───────────────

[2] In *MT Builders*, 197 P.3d 758, the Arizona Court of Appeals stated in dicta that an indemnity plaintiff must show (1) it has discharged a legal obligation owed to a third party, (2) the indemnity defendant was also liable to the third party, and (3) as between itself and the indemnity defendant, the obligation should have been discharged by the defendant.  *Id.* at 764 n.2.  The Court does not read this dicta as requiring that the Knight entities prove they or the Payless entities were in fact liable to the McGills.  *MT Builders* cited two Arizona cases that in turn relied on § 76 of the Restatement (*id.*), and the Court relies on § 78's refinement of the rule stated in § 76, which makes clear that a justifiable belief of liability is sufficient to support a right to indemnification.

[3] The Court applies Restatement (First) of Restitution § 76 to this case, but notes that Restatement (Third) of Restitution and Unjust Enrichment, § 24 (2011), could also be applied.  The Court chooses § 76 because no Arizona court has ever cited or applied § 24, while § 76 has been cited in at least two Arizona cases, *INA Ins.*, 722 P.2d at 979, and *Am. & Foreign Ins. Co.*, 677 P.2d at 1333, and these cases in turn were cited in the most recent Arizona discussion of equitable indemnification, *MT Builders*, 197 P.3d at 764 n.2.  In addition, § 76 and *MT Builders* have been applied and cited by this Court several times.  *See Monje v. Spin Master Inc.*, No. CV-09-1713-PHX-GMS, 2013 WL 2390625, *12 (D. Ariz. May 30, 2013) (citing *MT Builders*, § 76, and listing elements of equitable indemnification); *CSK Investments, LLC v. Select Portfolio Servicing, Inc.*, No. CV-10-452-PHX-GMS, 2011 WL 1158551, *4 (D. Ariz. Mar. 29, 2011) (same); *SRK Consulting, Inc. v. MMLA Psomas, Inc.*, No. CV-09-611-PHX-GMS, 2009 WL 2450490, *3 n.4 (D. Ariz. Aug. 11, 2009) (same); *Payless Shoesource, Inc. v. Pac. Employers Ins. Co.*, No. CV-08-2317-PHX-DGC, 2009 WL 4439267, *2 (D. Ariz. Nov. 24, 2009) ("Common law indemnity is set forth generally in section 76 of the Restatement (First) of Restitution (1937)[.]").  Other jurisdictions also continue to apply § 76.  *See City of New York v. Nat'l R.R. Passenger Corp.*, 960 F. Supp. 2d 84, 99 (D.D.C. 2013); *Duncan-Williams, Inc. v. Capstone Development, LLC*, 908 F. Supp. 2d 898, 911 (W.D. Tenn. 2012).  Even if the Court applied § 24 of the Third Restatement, however, the result would be the same.  The Court finds that the Knight entities' payment of $970,000 to the McGills constituted the performance of an obligation for which the Knight entities "would have been independently liable," the Knight entities made the payment "in the reasonable protection of [their] own interests," and the obligation was "primarily the obligation of the [Payless entities]."  *See* Restatement (Third) of Restitution and Unjust Enrichment § 24.

**B.    Relevant Facts.**

The Knight and Payless entities were sued in the second lawsuit for breach of contract, negligence, and bad faith.  The McGills asserted claims assigned by Bovre, and sought to recover the $8 million established in the consent judgment against Bovre. Doc. 1-2 at 36.  Although the Court doubts that the full $8 million was recoverable from the Payless entities, certainly the $1 million in SLI coverage as well as Bovre's other compensable damages (emotional suffering, time, effort, and inconvenience) were potentially recoverable.[4]  The second lawsuit was based entirely on events that happened at the rental desk – the desk agent's use of a contract form that specifically required initials to decline SLI coverage, his failure to obtain Bovre's initials, and his alleged representation that the transaction included liability insurance.  An expert witness for the Payless entities, David Paige, agreed that the absence of Bovre's initials on the contract gave his account of the rental transaction "a patina of believability" and that the lawsuit presented risk to the Knight entities.

The attorney for the McGills made a time-limited settlement demand to both the Knight entities and the Payless entities for $1 million, later reduced to $970,000.  Ex. 32. Eric Jarvis, CEO of the Knight entities, testified that the Knight entities asked the Payless entities to contribute 50% to payment of this settlement amount, but the Payless entities declined.  *See also* Doc. 325 at 5, ¶ 33; Ex. 59.

Faced with substantial liability and no contribution from the Payless entities, the Knight entities elected to settle by paying $970,000 to the McGills.  Ex. 34.  The Court has previously held that this payment constituted an accord and satisfaction that extinguished the breach of contract claims asserted in the lawsuit against the Knight and

---

[4] The maximum amount of SLI coverage available in a contract with the Payless entities was $1 million.  Ex. 9 at 1.  It is possible that the McGills could have recovered more than this amount from the Knight entities on the basis of their alleged insurance bad faith, *Webb v. Gittlen*, 174 P.3d 275, 280-81 (Ariz. 2008), but the Court cannot conclude that the McGills could have recovered more in insurance coverage from the Payless entities than the $1 million in SLI, *see id.* at 281 (concluding that insurance agents would not be bound by stipulated *Damron* judgments to which they were not parties). Additional damages for Bovre's inconvenience, time, effort, and emotional suffering may have been recoverable from the Payless entities.

1    Payless entities.  Doc. 261 at 9-11.[5]

2        **C.    Analysis.**

3        The Court concludes that the Knight entities discharged a duty owed to the

4    McGills, which, as between the Knight entities and the Payless entities, should have been

5    discharged by the Payless entities.  Restatement (First) Restitution § 76.  As noted above,

6    the Knight entities need not prove that they or the Payless entities were in fact liable to

7    the McGills (or to Bovre from whom the McGills' claims were assigned).  Under § 78 of

8    the Restatement, it is sufficient if the Knight entities were subject to a "supposed

9    obligation" which the Payless entities had a greater responsibility to discharge, the

10   Knight entities became subject to the obligation because of the fault of the Payless

11   entities, and, in choosing to make the settlement payment, the Knight entities acted in the

12   "justifiable belief" that they would be liable in the McGills' lawsuit.  Restatement (First)

13   Restitution § 78.

14       These requirements are satisfied.  Bovre asserted in his initial statement in 2010,

15   and later in his deposition, that the desk agent told him the rental contract included

16   liability insurance.  The desk agent was not able to contradict this assertion because he

17   could not recall the transaction.  Bovre further testified that he did not initial the line to

18   decline SLI coverage because the desk agent told him that liability coverage was

19   included, and that he left the rental counter believing he had SLI coverage for the rental

20   car.

21       These facts gave rise to a plausible claim of SLI coverage.  Bovre's testimony

22   about the desk agent's promise of liability coverage would have been admissible at trial

23   to explain the rental contract.  *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134,

24   1140 (Ariz. 1993) ("the judge first considers the offered evidence and, if he or she finds

25   ───────────────

26       [5] As part of the settlement, the Knight entities obtained an assignment of claims
     against the Payless entities.  Ex. 34.  As consideration for any possible effort and expense
27   the McGills or their counsel might be required to expend in helping establish the assigned
     claims, the Knight entities promised to provide the McGills with 15% of the first
28   $250,000 recovered from the Payless entities and 10% of any amount in excess of
     $250,000.  *Id.* at 3.

- 15 -

that the contract language is 'reasonably susceptible' to the interpretation asserted by the proponent, the evidence is admissible to determine the meaning intended by the parties"). Further, the rental contract specifically identified the means for declining SLI: "*by initialing here*, you decline to purchase supplemental liability insurance[.]"  Ex. 1 at 1 (emphasis added).  This contract language, which was created by the Payless entities, states clearly that SLI coverage is declined by initials.  The implication is that such coverage is not declined when no initials are placed in the space provided.  No other language on the face of the contract rebuts this implication.  To the contrary, a later statement on the face of the contract reads: "NOTICE: Our liability insurance does not cover injuries to passengers in the Vehicle."  *Id.*  This apparent confirmation of some form of liability coverage, like the rest of the contract's face, does not distinguish between SLI and the statutory minimum liability coverage the Payless entities were required to provide under Arizona law.  It simply suggests, as did the desk agent, that the contract includes liability coverage.

The Payless entities argue that the absence of SLI coverage is shown by fact that the daily SLI charge of $13.95 is not included in the "Charge Summary" portion of the contract.  But nothing in the charge summary says that SLI is excluded unless a charge is shown (Ex. 1 at 1), and the desk agent specifically stated, according to Bovre, that liability coverage was included.

When the language on the face of the contract is combined with the desk agent's statement, the Court concludes that a fact finder in the second lawsuit likely would have found that Bovre was given SLI coverage in the rental agreement.  The Knight and Payless entities were subject to considerable risk on the McGills' breach of contract claims.

This conclusion is buttressed by the fact that the Payless entities do not point to any language in the rental contract which states that SLI coverage is not included.  To the extent they are relying on the fine-print boilerplate on the back of the contract, which was never mentioned at trial and which even the Court has difficulty reading in the trial

exhibit (*see* Ex. 1 at 2), Arizona law would not support such an argument.  Under the "reasonable expectations" doctrine, Arizona courts will not enforce boilerplate provisions of an insurance contract when the insurer has reason to believe that the insured would not have agreed to those terms.  *Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277, 283 (Ariz. 1987).  This is particularly true "[w]here some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured," or "[w]here some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy."  *Id.* at 284.  The actions of the Payless entities in the rental transaction created a reasonable expectation of insurance coverage in Bovre.

In short, given the contract language used by the Payless entities in the rental agreement, the absence of Bovre's initials which were expressly required to decline SLI coverage, and the desk agent's statement that liability insurance was included, the Knight entities had a justifiable belief that they would be held liable to the McGills for SLI coverage and for the injuries suffered by Bovre as a result of the denial of coverage.[6]  The Knight entities also justifiably believed that the Payless entities were primarily liable for the claim as it arose from the language of their contract and the actions of their desk agent.  The requirements of § 78 of the Restatement are satisfied.[7]

---

[6] The Payless entities argue that KnightBrook denied coverage on the Bovre SLI claim without conducting an adequate investigation.  If true, this assertion would suggest that the Knight entities were at least partially responsible for any injuries Bovre suffered as a result of the claim being denied.  But Howard Hirsch, the KnightBrook vice president of claims who denied the Bovre claim, testified credibly that before denying coverage he reviewed all relevant documents and called the manager of the Payless entities' Phoenix operation.  He was told by the manager that SLI coverage had not been sold to Bovre in the transaction and that the desk agent had not informed Bovre that liability coverage was included.  Given these facts, the Court cannot conclude that KnightBrook acted prematurely in denying the claim.

[7] The Court's holding that Bovre's negligence claims are barred by the statute of limitations does not alter this conclusion.  Those claims survived summary judgment and the Knight entities could not have known with certainty that the Court would find them time-barred at trial.  In addition, the McGills asserted contract claims that likely had merit for the reasons explained above.

1    The Court also concludes that the Knight entities discharged an obligation owed

2  by the Payless entities.  As noted above, the Court previously held that the $970,000

3  settlement payment constituted an accord and satisfaction that discharged the breach of

4  contract claims asserted against the Payless entities.  Doc. 261 at 9-11.

5    In addition, for reasons explained above, the Court concludes that the Knight

6  entities' potential liability to the McGills arose from the fault of the Payless entities.  The

7  actions of the Payless entities alone gave rise to the claim for SLI coverage that presented

8  substantial exposure to the Knight entities.[8]

9        **D.    Anti-Subrogation Rule.**

10    The Payless entities argue that the claim for indemnification is barred by the anti-

11  subrogation rule.  That rule is a common law doctrine "intended to prevent an insurer

12  from recovering back from its insured that loss or damage, the risk of which the insured

13  had passed along to the insurer under the policy."  16 Lee R. Russ & Thomas E. Segalla,

14  *Couch on Insurance* § 224:1 (3d ed. 2005).  Although the Court concluded in its

15  summary judgment ruling that the anti-subrogation rule would bar any claim by the

16  Knight entities against the Payless entities as their insured, further research has changed

17  the Court's view.

18    As a leading treatise explains, broad descriptions of the anti-subrogation rules "are

19  generally accurate but tend to leave out a crucial boundary of the rule: the prohibition of

20  insurers' subrogation against their own insureds applies to claims arising from the *very*

21  *risk* for which the insured was covered by that insurer."  *Id.*, § 224:1 at 224-15 (emphasis

22  added).  This boundary has been recognized in many cases.  As one court explained:

23  "courts have held that if a policy does not cover an insured for the particular loss or

---

[8] Desk agent Dennis Fisher and the Payless entities' expert, Leslie Saunders, both admitted during trial that Fisher erred when he failed to get Bovre's initials on the SLI coverage line.  The Payless entities argue that the mistake did not breach the standard of care for the rental car industry – that errors in paperwork are known to happen and that Bovre had some responsibility for initialing the contract correctly – but the Court need not decide whether Fisher's actions would satisfy a negligence standard.  Fisher's conduct gave rise to the McGills' claims.  The Court concludes that, as between the Payless entities which controlled the Bovre transaction and the Knight entities which did not, the Payless entities are at fault for the claims for which indemnification is sought.

liability that the insurer seeks to impose on the insured, there is no obstacle to equitable subrogation." *Truck Ins. Exch. v. Cnty. of Los Angeles*, 95 Cal. App. 4th 13, 22-23, 115 Cal. Rptr. 2d 179, 186-87 (2002).

This limitation on the anti-subrogation rule has been recognized by Arizona courts.   In *Amica Mut. Ins. Co. v. Autodriveaway Co.*, 831 P.2d 882 (Ariz. Ct. App. 1992), the court recognized that an insurer could recover collision damage from an entity insured under the liability portion of the insurer's policy, but not under the collision coverage portion of the policy.  *Id.* at 885-86; *Autodriveway Co. v.  Aetna Cas. & Sur. Co.*, 506 P.2d 264, 266-67 (Ariz. Ct. App. 1973) (same); *see also Couch on Insurance* § 224:38 at 224-62 ("In many instances, the [anti-subrogation] rule has been held inapplicable to bar an insurer's subrogation action against a third party which is insured for some purposes where the subrogation claim involves risks or losses for which the third party is not, in fact, covered by the policy.").

Although the Payless entities are a named insured under the SLI Policy, their insurance coverage is limited.  The SLI Policy covers the Payless entities for sums they become "legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use . . . of an owned automobile[.]"  Ex. 9 at 2.   An "occurrence" is defined in the policy as "an accident[.]"  *Id.* at 4.  The Rental Car Company Endorsement to the SLI Policy defines "automobile" as "a land motor vehicle of the private passenger type which is owned by the Master Policy Holder, and which the Master Policy Holder rents to a Renter who has indicated acceptance of Supplemental Liability Insurance on the face of the Rental Contract."  *Id.* at 12.  The Endorsement also extends coverage to the renters who elect SLI coverage.  *Id.* at 11.

Thus, insurance coverage under the SLI Policy is limited to bodily injury or property damage arising from an accident involving a rented vehicle for which the renter elected SLI coverage.  Both the renter and the Payless entities are covered.  The evidence at trial made clear that the coverage most often would be applied to renters, covering their

liability for bodily injury and property damage caused by accidents. The insurance expert for the Payless entities, David Paige, testified that there would also be coverage for the Payless entities in some circumstances. For example, if a party injured by a Payless renter asserted that the injury was due to the Payless entities' poor maintenance of the rental car, the Payless entities would have coverage under the SLI Policy. The former vice president of claims for KnightBrook, Howard Hirsch, agreed.[9]

But no such claim was made in this case. In the Underlying Lawsuit brought by the McGills against Bovre, the McGills alleged that Bovre was negligent in operating the vehicle that caused their injuries. They did not allege that their injuries were caused by the Payless entities' ownership or maintenance of the Dodge Durango.

The second lawsuit brought by the McGills did not seek to recover damages for bodily injury or property damaged caused by the accident. Rather, the McGills asserted claims which originally belonged to Bovre and were assigned to the McGills in settlement of the first case – claims that the Payless and Knight entities breached written and oral contracts with Bovre, were negligent in various ways related to the rental transaction, and engaged in insurance bad faith. These claims clearly were not covered by the SLI Policy. Indeed, the Payless entities never made a claim for insurance coverage to KnightBrook related to the second lawsuit. Ex. 150. And the Payless entities' insurance expert, David Paige, confirmed that the lawsuit was not covered by the SLI Policy. Thus, when the Knight entities paid $970,000 to settle the second lawsuit, they were settling claims not covered by their policy and for which the Payless entities were not insured.[10]

Because the $970,000 paid by the Knight entities settled claims that plainly were

---

[9] The CEO of the Knight entities, Eric Jarvis, testified that only renters are covered by the SLI Policy and that the Payless entities have no coverage. The Court finds the testimony of David Paige and Howard Hirsch to be more credible and more consistent with the language of the SLI Policy.

[10] The Payless entities did seek coverage for the second lawsuit under other insurance policies with General American and Chartis. *See* Exs. 103, 104, 105, 106, 108. General American paid the Payless entities' defense costs for the second lawsuit until a court ruled that the Payless entities were not covered by the General American policy.

not covered by the SLI Policy, the anti-subrogation rule does not bar the Knight entities from seeking to recover that amount from the Payless entities.  The rule does not bar an "action against a third party which is insured for some purposes, where the subrogation claim includes risks or losses for which the third party is not, in fact, covered by the policy."  *Couch on Insurance* § 224:38 and 224-62 through 224-63.[11]

### E.    Unclean Hands.

The Payless entities argue that equitable indemnity can be defeated by unclean hands.  The Court does not agree.

For the reasons discussed above, the Court finds that the Payless entities were at fault for the claims settled by the Knight entities.  As a result of their actions, the Knight entities faced significant liability.  The Court cannot conclude that the Knight entities acted wrongfully when they sought to eliminate this exposure and asked the Payless entities to contribute 50% to settle the claims.  Nor can the Court conclude that the Knight entities acted wrongfully when they proceeded to settle the case after the Payless entities refused to make any contribution.

The Payless entities' unclean hands argument is premised on the assertion that they were insured by the Knight entities.  But as explained above, they were not insured for the risk settled with the payment of $970,000.  Given this fundamental fact, the Court cannot conclude that it was improper for the Knight entities to obtain an assignment of claims against the Payless entities or seek equitable indemnification.  The Knight entities' assertion of claims against the Payless entities did not violate the anti-subrogation rule, nor did it constitute a breach of the covenant of good faith and fair dealing implied in the SLI Policy, as discussed further below.[12]

---

[11] In light of this ruling and the Court's conclusion that the breach of fiduciary duty claim is time-barred, the Court need not decide whether the Payless entities acted as an agent of the Knight entities when handling the rental transaction with Bovre.

[12] The Payless entities argue that the Knight entities proceeded to obtain an assignment of claims against them without disclosing that intent and after the possibility of a full release of all claims had been discussed.  But the assignment of claims was obtained only after the Knight entities had invited the Payless entities to participate in the settlement and the Payless entities had refused.  Because the Payless entities failed to pay

**F.      Remedy.**

The Knight entities have satisfied the requirements for equitable indemnification and the Payless entities have not shown that the recovery is barred by the anti-subrogation rule or unclean hands.  The Court must therefore consider the remedy to which the Knight entities are entitled.

The Payless entities argue that a recovery of the full $970,000 from them would not be appropriate because the $1 million in SLI coverage should have been reduced by the $500,000 available through Bovre's personal liability policy with Travelers.  The Court does not agree.  The SLI Policy does state that it is "[e]xcess of any other applicable insurance" and covers "[t]he difference between $1,000,000 Combined Single Limit for each accident, and the higher of state required Financial Responsibility Limits or underlying limits."  Ex. 9 at 1.  But this language appears on the Declarations Page where the Payless entities (specifically, PCR Venture) are identified as the "Named Insured."  *Id.*  This language would appear, therefore, to apply to "other applicable insurance" or "underlying limits" procured by the Payless entities, not to personal insurance procured by Bovre.  Other language in the policy supports this conclusion.  The "Additional Conditions" to the liability insurance state that "this insurance shall not apply if other valid and collectible insurance is available to *the named insured*."  *Id.* at 5 (emphasis added).  The Payless entities are the "named insured."  The Rental Car Company Endorsement, which provides that the coverage may be extended to persons who rent cars from the Payless entities, does not address this issue.  *Id.* at 11-12.

Given the language of the SLI Policy, the Court concludes that the SLI coverage Bovre acquired from the Payless entities would not have been subject to a reduction for the amount of his own personal liability insurance.  Another district court and the Ninth Circuit have agreed with this conclusion when interpreting a similar rental car policy.

---

even a dollar to settle a problem of their own making, the Court cannot conclude that they were somehow prejudiced by the Knight entities' efforts to protect themselves and secure their right to recover funds from the more responsible party.

*See Vigilant Insurance Co. v. Lincoln Gen. Ins. Co.*, 2008 WL 4005857, at *1 (D. Nev. Aug. 25, 2008) aff'd in part, 362 F. App'x 841 (9th Cir. 2010).  In addition to relying on the language of the policy, the courts in *Vigilant Insurance* noted that SLI coverage would be illusory if it could be offset by the rental customer's own personal liability coverage in the same amount.  *Id.*

The Knight entities were aware of these authorities when they concluded that $970,000 was a reasonable settlement of the McGills' second lawsuit.  Ex. 86.  The Court concludes the Knight entities acted reasonably when they paid the settlement, and that the full amount of the payment is recoverable from the Payless entities in indemnification.

The Knight entities also seek reimbursement for their attorneys' fees.  "The general rule is that attorney's fees and costs are recoverable as part of the indemnification."  *Schweber Electronics v. Nat'l Semiconductor Corp.*, 850 P.2d 119, 125 (Ariz. Ct. App. 1992).  There is, however, an important limitation: "the right of indemnity includes a right to attorney's fees incurred in defending the underlying claim, but does not include the right to fees incurred in establishing the right of indemnity."  *INA Ins.*, 722 P.2d at 983; *see also See also Howard P. Foley Co. v. Employers-Commercial Union*, 488 P.2d 987, 990 (Ariz. Ct. App. 1971) ("[L]egal fees and expenses incurred in connection with trial of the issue of indemnity are not recoverable by the indemnitee.").  The Knight entities will be awarded the attorneys' fees they incurred in defending against the McGills' second lawsuit, but not the fees incurred in pursuing their claim against the Payless entities.

**V.    The Payless Entities' Claim for Insurance Bad Faith.**

A covenant of good faith and fair dealing is implied in every insurance contract. *Dease v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1267 (Ariz. 1992).  Breach of the covenant is a tort.  *Id.*  The covenant of good faith and fair dealing requires an insurer "to play fairly with its insured."  *Zilich v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz. 2000).  The insurer owes the insured "some duties of a fiduciary nature," including "[e]qual consideration, fairness, and honesty."  *Zilich*, 995 P.2d at 279 (citing

*Rawlings*, 726 P.2d at 570).

The Payless entities bring a counterclaim for insurance bad faith against the Knight entities.  They assert that the Knight entities breached their covenant of good faith and fair dealing by demanding that the Payless entities contribute to the settlement, failing to obtain a release for the Payless entities, obtaining an assignment of the McGills' claims, and asserting an indemnification claim against the Payless entities.

The Knight entities have not engaged in any bad faith.  As shown above, they were not the insurer of the Payless entities for purposes of the claims asserted by the McGills in the second lawsuit.  The Knight entities were confronted with a risk created by the fault of the Payless entities, sought to mitigate that risk by paying half of the settlement and inviting the Payless entities to do the same, and were forced to eliminate the risk alone when the Payless entities refused to contribute.  They did not breach a duty of equal consideration, fairness, or honesty when they settled the claims and preserved their right to recover from the entities primarily responsible for the claims.[13]

**IT IS ORDERED:**

1.    The Knight entities' claims for negligence, negligent misrepresentation, and breach of fiduciary duty are barred by the statute of limitations.

2.    The Payless entities have failed to prove their claim of insurance bad faith against the Knight entities.

3.    The Knight entities are entitled to indemnification from the Payless entities in the amount of $970,000.  The Knight entities are also entitled to recover their reasonable attorneys' fees and expenses incurred in defending against the second lawsuit filed by the McGills.  On or before **May 1, 2015**, the Knight entities shall file a memorandum setting forth the expenses and fees reasonably incurred in defending against that lawsuit.  The Payless entities shall file a response on or before **May 15, 2015**.

---

[13] In reaching its decision in this case, the Court has not relied on the testimony of Thomas Zlaket, an expert presented by the Knight entities.  The Court concludes that the Zlaket testimony concerned legal issues that are not properly the subject of expert testimony.

The Knight entities shall file a reply on or before **May 22, 2015**.

       4.     The Clerk shall enter judgment consistent with this Order.

Dated this 17th day of April, 2015.

_____
David G. Campbell
United States District Judge