**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KnightBrook Insurance Company; and Knight Management Insurance Services, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Payless Car Rental System, Inc.; and PCR Venture of Phoenix, LLC,<br><br>Defendants. | No. CV-12-01671-PHX-DGC<br><br>**ORDER** |

Following an appeal, the Ninth Circuit remanded the equitable indemnification claim asserted by Plaintiffs KnightBrook Insurance Company and Knight Management Insurance Services, LLC (collectively, "KnightBrook") against Defendants Payless Car Rental System, Inc. and PCR Venture of Phoenix, LLC (together, "Payless"). Doc. 418. The parties have briefed the remaining issues (Docs. 433, 439, 441), and the Court heard oral argument on November 30, 2018 (Doc. 443). For reasons stated below, the Court finds that KnightBrook has failed to establish a right to indemnification from Payless.

**I.    Background.**

The following background information is based on evidence presented at the previous bench trial and the Court's findings of fact. *See* Doc. 376 at 2-5.

In February 2010, Payless rented a car to Michael Bovre. The rental agreement provided Bovre with an opportunity to purchase Supplemental Liability Insurance

("SLI") of $1 million. KnightBrook provided the SLI coverage pursuant to a commercial automobile liability insurance policy issued to Payless. Bovre did not affirmatively decline SLI coverage by initialing the rental contract where appropriate, and the Payless desk agent told Bovre that "liability" coverage was included in the contract at no charge. As required under Arizona law, Payless provided Bovre with liability insurance coverage for minimum financial limits of $15,000/$30,000.

On March 1, 2010, Bovre was driving the Payless rental car when he collided with a motorcycle carrying Robert and Lorraine McGill, causing them significant and permanent injuries. Bovre sought coverage for the accident under the SLI policy, but KnightBrook denied the claim because Bovre did not pay for SLI coverage.

The McGills sued Bovre and issued a settlement demand in February 2011. *See McGill v. Bovre*, No. CV2011-003518 (Maricopa Cty. Super. Ct. Feb. 8, 2011). The McGills sought the total available liability limits afforded by (1) Bovre's personal liability insurance policy with Travelers, which was $500,000; (2) Payless's state-mandated rental car coverage of $30,000, provided by Great American Assurance Company, and (3) the SLI coverage of $1,000,000.

Travelers and Great American offered to pay $530,000 to settle the claims against Bovre, but the McGills declined to accept this amount in full satisfaction of their claims. To protect his interests, Bovre entered into a *Damron* settlement agreement with the McGills. *See Damron v. Sledge*, 460 P.2d 997 (Ariz. 1969). Under the agreement, Bovre paid the available $530,000 of insurance coverage to the McGills and assigned them all claims he had against KnightBrook and Payless. Bovre and the McGills stipulated to an $8 million judgment against Bovre, and the McGills agreed not to seek further payments from him.

The McGills filed this action in June 2012, asserting Bovre's assigned claims for breach of contract, negligence, and bad faith against KnightBrook and Payless. *See* Doc. 1-2 at 36-43; Doc. 40. On March 14, 2013, the McGills sent a settlement demand for $1 million to Payless and KnightBrook that would resolve all claims in the lawsuit.

The McGills later reduced their demand to $970,000 to account for the $30,000 they had received in state-mandated coverage.

KnightBrook suggested to Payless that they each pay half of the $970,000 to settle the suit. When Payless declined, KnightBrook settled with the McGills by paying $970,000 and taking an assignment of the McGills' claims against Payless. On June 14, 2013, KnightBrook filed a complaint against Payless asserting the assigned claims for breach of contract and negligence, as well as its own claims for equitable indemnification and breach of fiduciary duty. Doc. 116. Payless counterclaimed for insurance bad faith. Doc. 144.

The Court held on summary judgment that the breach of contract claims assigned to KnightBrook were extinguished by an accord and satisfaction when $970,000 was paid to the McGills. Docs. 261. Following a bench trial, the Court held that the negligence and breach of fiduciary duty claims were time-barred, that Payless failed to prove its bad faith counterclaim, and that KnightBrook was entitled to equitable indemnification for the $970,000 settlement payment. Doc. 376. Relying in part on § 78 of Restatement (First) of Restitution, the Court held that KnightBrook was subject to and discharged a "supposed obligation" to the McGills which Payless had a greater responsibility to discharge. *Id.* at 15-18; *see KnightBrook v. Payless*, 100 F. Supp. 3d 817, 827-34 (D. Ariz. 2015). The Court entered judgment in favor of KnightBrook and against Payless on the equitable indemnification claim. Doc. 377 at 1.

Payless appealed the rulings on its bad faith counterclaim and KnightBrook's equitable indemnification claim. Doc. 385. The Ninth Circuit certified two questions to the Arizona Supreme Court: (1) whether Arizona equitable indemnity law incorporates Restatement § 78, and (2) whether equitable indemnity liability under § 78 requires that the indemnity plaintiff's liability to the underlying plaintiff be "coextensive" with the indemnity defendant's liability to the underlying plaintiff. *KnightBrook v. Payless*, 855 F.3d 1072, 1074 (9th Cir. 2017). The Arizona Supreme Court answered the first question in the negative and deemed the second question moot. *KnightBrook v. Payless*, 409 P.3d

293, 294 (Ariz. 2018). The Ninth Circuit remanded KnightBrook's equitable indemnification claim to this Court to apply the "actual obligation" standard articulated by the Arizona Supreme Court and to determine whether KnightBrook's $970,000 settlement with the McGills discharged a "common" liability of KnightBrook and Payless. *KnightBrook v. Payless*, 731 Fed.Appx. 632, 634 (9th Cir. 2018). The Ninth Circuit affirmed the judgment against Payless on its bad faith counterclaim.

Because a full record had been created by the bench trial, the Court and the parties agreed that the equitable indemnification claim could be resolved by additional briefing and argument. Doc. 427. The Court now finds that KnightBrook did not make the $970,000 settlement payment solely to discharge a common or coextensive obligation. Because the Court cannot determine what portion of the payment may have been paid to discharge such an obligation, KnightBrook has not shown that it is entitled to equitable indemnification under Arizona law. Given this ruling, the Court need not decide whether an actual obligation was owed to Bovre.

## II. Arizona's Equitable Indemnity Law.

In addressing the certified questions, the Arizona Supreme Court described the state's equitable indemnity law as follows:

> Arizona's equitable indemnity law seeks to avoid unjust enrichment by allowing recovery only when an indemnity plaintiff subject to derivative or imputed liability discharges an actual obligation that a culpable indemnity defendant owed to a third party.

*KnightBrook*, 409 P.3d at 295 (citing *MT Builders, LLC v. Fisher Roofing, Inc.*, 197 P.3d 758, 764 n.2 (Ariz. Ct. App. 2008)). Applying the three-part test set forth in *MT Builders*, the court explained that "the plaintiff in a common law indemnity action generally must show: (1) it 'discharged a legal obligation owed to a third party'; (2) for which the 'indemnity defendant was also liable'; and (3) as between the two, 'the obligation should have been discharged by the indemnity defendant.'" *Id.* at 295 (quoting *MT Builders*, 197 P.3d at 764 n.2). The court noted that Arizona's equitable

indemnity principles are consistent with § 76 of the Restatement (First) of Restitution and § 23 of the Restatement (Third) of Restitution and Unjust Enrichment. *Id.* at 295.[1]

According to the Ninth Circuit, the Arizona Supreme Court made clear that equitable indemnity under Arizona law "effectively requires coextensive liability[.]" *KnightBrook*, 731 Fed.Appx at 634. Payless argues that KnightBrook's settlement with the McGills did not discharge a coextensive liability because Payless faced only a $1 million claim on the SLI policy, while KnightBrook faced not only the SLI liability claim but also Bovre's assigned insurance bad faith claim and exposure to the full $8 million *Damron* judgment. Doc. 439 at 5-7. Payless notes that the Ninth Circuit explicitly found that "[b]ecause KnightBrook's settlement payment to the McGills enabled it to avoid substantial liability that Payless did not face, KnightBrook's and Payless's liability to the McGills was not coextensive." *KnightBrook*, 855 F.3d at 1076.

KnightBrook counters that the parties' liability for the SLI policy claim was coextensive, and that no other damages were paid when KnightBrook settled with the McGills for the SLI policy limits of $970,000. Doc. 441 at 6-7. KnightBrook asserts that § 76 of the Restatement speaks to a duty that is "common" and does not require that all of the parties' putative liabilities be identical. *Id.* at 6 (citing *Herstam v. Deloitte & Touche*, 919 P.2d 1381, 1388 (Ariz. Ct. App. 1996) ("Indemnity allows one who has discharged a *common* liability to seek reimbursement from another." (emphasis in original))).

Having carefully considered the parties' arguments and relevant case law, the Court concludes that Arizona equitable indemnity law requires that the actual obligation discharged by the indemnity plaintiff – whether described as common or coextensive – be the same as the obligation faced by the indemnity defendant.

---

[1] Restatement § 76 provides that "[a] person, who in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other[.]" Restatement § 23 provides that where "the claimant renders to a third person a performance for which claimant and defendant are jointly and severally liable, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment."

The Arizona Supreme Court spoke of derivative or imputed liability, meaning liability created by the indemnity defendant and to which the defendant is subject, but which also is imputed to the indemnity plaintiff or for which the plaintiff is derivatively liable. In either case, the parties are subject to the same liability. *See KnightBrook*, 731 Fed.Appx at 634 (explaining that "equitable indemnification is available only when the indemnity plaintiff assumes the indemnity defendant's liability to a third party by virtue of some legal relationship"). The test set forth in *MT Builders*, which the Arizona Supreme Court suggested was the exclusive basis for equitable indemnity in Arizona, *see KnightBrook*, 409 P.3d at 425, likewise requires that the plaintiff must discharge a legal obligation for which the "defendant was also liable[.]" *MT Builders*, 197 P.3d at 764 n.2. Again, the obligation must be the same.

The Restatement also speaks of a single duty owed by both parties. Section 76 provides that a person is entitled to indemnity where he "has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other[.]" A comment to this section makes clear that the rule applies "where the payor's duty is coextensive with that of the principal obligor[.]" § 76 cmt. b. Restatement § 23 notes that indemnity "depends on a preexisting allocation of a common liability as between claimant and defendant, whereby their joint obligation to a third person is assigned to the defendant." § 23 cmt. b. Again, the parties must share a common liability. *See also* 42 C.J.S. Indemnity § 2 (2018) ("Indemnity applies only where there is an identical duty owed by one and discharged by another.").

Case law generally has recognized that equitable indemnity applies only where the duty discharged by the indemnity plaintiff is the same as the duty owed by the indemnity defendant – describing the duty as coextensive, common, or identical. *See Crab Orchard Improvement Co. v. Chesapeake & O. Ry. Co.*, 115 F.2d 277, 282 (4th Cir. 1940) (applying Restatement § 76 and finding that for equitable indemnity to apply "a benefit [must] be conferred upon the defendant by a discharge of his duty or obligation [and] the discharge must have occurred under circumstances in which the plaintiff was, at the same

time, discharging a personal obligation coextensive with that of the defendant"); *Md. Cas. Co. v. Paton*, 194 F.2d 765, 768 (9th Cir. 1952) (agreeing with *Crab Orchard* and finding no equitable indemnification because the insurer's duty to provide workmen's compensation benefits for a worker's death was not coextensive with the alleged tortfeasor's duty of care); *Nat'l Fruit Prod. Co. v. Baltimore & Ohio R.R. Co.*, 329 S.E.2d 125, 129-30 (W. Va. 1985) (noting that "other courts have followed the indemnity analysis applied in *Crab Orchard* and have concluded that the lack of a common and coextensive obligation forecloses any claim of implied indemnity" (citations omitted)); *Denny's Inc. v. Avesta Enters., Ltd.*, 884 S.W.2d 281, 290-91 (Mo. Ct. App. 1994) (equitable indemnity does not apply "unless the indemnitee and indemnitor have co-extensive, identical duties"); *Safeco Ins. Co. of Am. v. Russell*, 13 P.3d 519, 521 (Or. Ct. App. 2000) ("[I]t is not enough that the parties are each liable to plaintiff's insureds. In order to trigger a right of indemnity, their liability must also depend on a common duty.").

In this case, KnightBrook seeks reimbursement for the full $970,000 it paid to the McGills. Doc. 116 ¶ 68. For the reasons explained above, the Court concludes that KnightBrook may receive indemnification from Payless under Arizona law only if this payment discharged the same obligation for which Payless was liable. *See KnightBrook*, 409 P.3d at 295 (citing *MT Builders*, 197 P.3d at 764 n.2).[2] The key question, then, is whether KnightBrook's $970,000 payment to the McGills was paid to discharge the SLI

---

[2] The question is not whether KnightBrook faced other potential liabilities in the McGill lawsuit, but whether the amount KnightBrook seeks to recover from Payless was paid to discharge a common or coextensive obligation. Thus, the mere fact that KnightBrook was facing an assigned insurance bad faith claim does not disqualify it from seeking indemnification, provided the amount it seeks to recover was paid to discharge the same claim for which Payless was liable. *See Glob. Petromarine v. G.T. Sales & Mfg., Inc.*, 577 F.3d 839, 846 (8th Cir. 2009) (holding that an additional 90-day warranty found in the seller's brochure would not cause the seller's and manufacturer's joint obligation under a two-year warranty to lose its "coextensive and identical character"); *City of St. Joseph v. Kaw Valley Tunneling, Inc.*, 660 S.W.2d 26, 31 (Mo. Ct. App. 1983) (holding that a sewer system contractor found liable for property damage to a third party was entitled to indemnity from the city for the portion of damages proximately caused by the city's negligence in assessing soil conditions because to that extent the contractor's contractual duty to repair any damaged structures and the city's tortious duty "overlap and are identical").

policy obligation. If any portion of the payment was made to discharge obligations not owed by Payless (such as potential liability for the assigned bad faith claim), and that amount cannot be clearly identified and subtracted, then KnightBrook has not proven the amount for which it may obtain indemnification. *See City of St. Joseph*, 660 S.W.2d at 33 (holding that in order to recover indemnity the contractor was "required to prove the amount it [had] been required to pay out under its contract with the city because of the city's negligence").

**III.     The Obligations Discharged by KnightBrook's $970,000 Payment.**

KnightBrook contends that it settled the McGill lawsuit simply by paying the SLI policy limits as the McGills demanded. *See* Doc. 441 at 7. KnightBrook argued at the hearing that it had a viable defense to the assigned bad faith claim because Bovre never afforded KnightBrook an opportunity to settle within policy limits before entering the *Damron* agreement.[3] To cure this problem, KnightBrook asserts, the McGills gave KnightBrook an opportunity to settle for the SLI policy limits. KnightBrook accepted the opportunity and paid the $1 million in SLI coverage less $30,000 the McGills had already received in state liability coverage. KnightBrook claims that its payment of policy limits discharged KnightBrook's and Payless's common liability for SLI coverage – coverage that arose solely because of the negligence of Payless's desk agent in the rental transaction with Bovre.

In short, KnightBrook argues that the full $970,000 was paid to discharge the SLI policy claim, and that no portion was paid to settle a claim for which Payless was not liable. But this is not what the KnightBrook-McGill settlement agreement says. *See* Doc. 435-6. The agreement does not say that Knightbrook is paying SLI policy limits, that it is settling only the SLI policy claim, or even that the McGills are dismissing all

---

[3] *See Rogan v. Auto-Owners Ins. Co.*, 832 P.2d 212, 218 (Ariz. Ct. App. 1991) (an insurer's liability for denying coverage or refusing to defend in bad faith is confined to the limits of the policy where the insurer does not refuse an offer to settle within policy limits (citing *State Farm Mut. Auto. Ins. Co. v. Paynter*, 593 P.2d 948, 955 (Ariz. Ct. App. 1979)).

other claims in consideration for KnightBrook's payment of policy limits. Rather, the agreement states that KnightBrook is paying $970,000 as consideration for the settlement and the McGills are releasing *all* claims against KnightBrook, including the assigned bad faith claim. *Id.* at 2-5. In consideration for the $970,000 payment, the McGills agree to discharge KnightBrook from "any and all causes of action, suits, debts, liens, liabilities, claims, demands, damages, losses, fees or expenses of any nature whatsoever" that the McGills may have against KnightBrook. *Id.* at 4-5, ¶ 3. The released claims specifically include any claim for "breach of contract, negligence, bad faith (both in tort and contractual), breach of fiduciary duties, fraud, violation of insurance codes, [and] punitive damages[.]" *Id.* The face of the settlement agreement makes clear that KnightBrook paid $970,000 to settle more than the SLI policy claim. And because the settlement agreement does not apportion this payment among the various claims that were released, it is impossible to determine how much Knightbrook may have paid for release of the SLI policy claim.

KnightBrook contends that the March 14, 2013 demand letter sent by the McGills' attorney and subsequent emails between counsel show that KnightBrook paid nothing to settle the bad faith claim – that it was asked only to pay SLI policy limits. But the demand letter makes clear that KnightBrook was "exposed in excess of $8,000,000" on the bad faith claim and that payment of the settlement amount would constitute "full settlement of all of the claims against [KnightBrook]." Doc. 435-4 at 2-3 (Trial Ex. 32). The emails between counsel discussed whether the $1 million of SLI coverage should be reduced by the $500,000 the McGills received under Bovre's personal insurance policy and the $30,000 in state-mandated coverage. Doc. 436-2 at 2-3 (Trial Ex. 86). The demand ultimately was reduced to $970,000 to account for the $30,000 payment, but the rest of the demand letter remained the same. *Id.* at 2. Contrary to KnightBrook's assertion, the demand letter and emails do not show that KnightBrook paid nothing to settle the assigned bad faith claim. What is more, the Court could not consider the letter and emails in interpreting the settlement agreement because it includes an integration

clause stating that it is to be enforced in accordance with its written terms, and that there are no expectations to the contrary. Doc. 435-6 at 5, ¶ 4.[4]

It appears true that the $970,000 was arrived at by considering the available SLI policy limits, but the payment nonetheless discharged the bad faith and other claims asserted against KnightBrook. In fact, KnightBrook CEO Eric Jarvis testified at trial about KnightBrook's motivation in making the payment. He explained that after KnightBrook learned more about what happened between Bovre and Payless at the rental desk and how it could support a claim for SLI coverage, KnightBrook was "not as confident" in its denial of the underlying insurance claim. Doc. 438 at 58. KnightBrook was "exposed with an $ 8 million judgment, which made [it] more inclined to want to settle this case." *Id*. Jarvis further explained that the McGills' attorney threatened to "[c]ontinue the suit for the full $8 million or more," and that Jarvis "felt like [KnightBrook] had to settle" to avoid litigating an insurance bad faith claim in Arizona where the bad faith law is more favorable to plaintiffs than insurance companies. *Id.* at 55, 59-60. This testimony makes clear, as the Ninth Circuit noted, that "KnightBrook's exposure to at least $8 million of potential liability arising from the 'bad faith claim against KnightBrook' and the *Damron* judgment was an important factor motivating [Jarvis's] decision to settle the case for $970,000." *KnightBrook*, 855 F.3d at 1075 n.1.

KnightBrook's complaint against Payless also makes clear that the payment was made, at least in part, to settle the bad faith claim. The complaint alleges that KnightBrook was "forced to defend against a bad-faith lawsuit in which [it] faced

---

[4] Nor does the Court conclude that it may consider the demand letter and emails as parol evidence to interpret the settlement agreement. Under Arizona law, "the judge first considers the offered evidence and, if he or she finds that the contract language is 'reasonably susceptible' to the interpretation asserted by the proponent, the evidence is admissible to determine the meaning intended by the parties." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1140 (Ariz. 1993). In this case, the Court cannot conclude that the language of the settlement agreement is reasonably susceptible to KnightBrook's interpretation. The agreement states clearly that the $970,000 is paid to settle all claims against KnightBrook: "Once Plaintiffs receive the $970,000 payment from KnightBrook Insurance Company, they will dismiss with prejudice *all claims* against the Insurer Defendants in this lawsuit." Doc. 435-6 at 3 (emphasis added).

- 10 -

potential liability in excess of $8 million" and is entitled "to reimbursement of the $970,000 payment made to the McGills *to settle the bad-faith lawsuit*[.]" Doc. 116 ¶¶ 66, 68 (emphasis added).

Given these facts, the Court cannot conclude that KnightBrook paid the $970,000 to settle nothing more than the SLI policy claim for which Payless was also liable. KnightBrook faced liability on the assigned bad faith claim, its management was concerned about that liability and exposure to the $8 million judgment, and the payment expressly purchased a complete release of the bad faith claim as well as the SLI policy claim.

## IV. Conclusion.

KnightBrook seeks to recover the full $970,000 from Payless, but it has failed to show that this amount was paid solely to discharge the SLI policy obligation for which it claims Payless was also liable. Because the various obligations KnightBrook discharged with the payment included obligations not owed by Payless – duties that were not common or coextensive – KnightBrook may not recover on its equitable indemnification claim.[5]

**IT IS ORDERED** that KnightBrook is not entitled to equitable indemnification from Payless for its $970,000 settlement payment to the McGills. The Clerk shall enter judgment in favor of Payless and against KnightBrook on the equitable indemnification claim (Doc. 116 ¶¶ 57-68 (count five)) and terminate this action.

Dated this 19th day of December, 2018.

*David G. Campbell*

David G. Campbell
Senior United States District Judge

---

[5] The Court also notes that, at the time of the settlement, KnightBrook had no intention of discharging Payless's SLI liability. To the contrary, KnightBrook took an assignment of the SLI claim to assert against Payless. Doc. 435-6 at 4, ¶ 4. The discharge occurred only because the Court later held that KnightBrook's payment was an accord and satisfaction. Doc. 261 at 10.

- 11 -